**TITLE INSURANCE AND TRUST CO.,** as Trustee of the Robert Tollin Greenspan Trust; Title Insurance and Trust Co., as Trustee of the Wayne Daniel Greenspan Trust; and Title Insurance and Trust Co. as Trustee of the William Victor Greenspan Trust, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**No. 70–165.**

United States District Court,
C. D. California.

May 16, 1971.

Balter & Sturman, by J. Howard Sturman, Los Angeles, Cal., for plaintiff.

Robert L. Meyer, U. S. Atty., by Mason C. Lewis, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

IRVING HILL, District Judge.

On February 11, 1971, at 10:00 A.M., this case was tried to the Court without a jury. Upon consideration of the evidence introduced by the parties in this proceeding by way of a Stipulation of Agreed Facts, as well as the pleadings and other documents filed in this matter, and upon oral argument by counsel,

the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

### I

Plaintiff is a corporation duly organized and authorized to operate under the laws of the State of California, having its principal place of business in the County of Los Angeles, in the Central District of California. This Court has jurisdiction and venue of this action for the refund of internal revenue taxes under Title 26 U.S.C. § 7422, Title 28 U.S.C. §§ 1346(a)(1), 1402(a)(2), and the internal revenue laws of the United States.

### II

The plaintiff in this action, Title Insurance and Trust Company, is the named trustee for three separate trusts created on October 17, 1957, which trusts still are in existence as of the date hereof. These irrevocable trusts (hereinafter called Greenspan trusts) were created by Sidney and Helen Greenspan for each of their three children, who were then aged 11, 6, and 3, respectively, by transferring to Title Insurance and Trust Company, as independent trustee, for each trust, 450 shares of the common voting stock of Robillwayne Corporation. All of the trust instruments were identical with the exception of the named beneficiary. Under the terms of the trust instruments, the corporation was given an option, exercisable at any time, to redeem by purchase all or any part of the shares of stock of the corporation which were a part of the trust estate, at the stock's fair value. Neither of the trustors ever had, or now has, any ownership interest in or control over the operations of the Trustee.

### III

Robillwayne Corporation was organized on October 21, 1954, and is still in existence. As of the date of incorporation, Sidney Greenspan jointly owned with his wife, Helen, 3000 shares (100%) of the common stock.

### IV

Since the transfers into the Greenspan trusts were made without consideration, the tax basis of the Robillwayne Corporation stock in the hands of the trusts was the same as it was in the hands of the trustors, or, $10.00 per share for a total, per trust basis of $4,500.00.

### V

Each trust's 450 shares of stock represented 15% of the total common stock of Robillwayne Corporation. Consequently, from the time of the transfers into trust up to the time of the redemption, the trusts owned a total of 45% of Robillwayne Corporation's stock and Sidney and Helen Greenspan jointly owned the remaining 55%. Subsequent to the redemption, Sidney and Helen Greenspan jointly owned, and still own, 100% of the outstanding stock of Robillwayne Corporation.

### VI

The purpose for the creation of each trust, as set out in the Declaration of Trust, was to provide for the education of each beneficiary, to provide an amount of money with which to establish a home or family on his marriage, and to provide a measure of financial security for him during his early adult years. The trust vehicle was used for this purpose in order to provide the desired funds in all events and to establish the funds beyond the reach of the creditors of both the trustors and the beneficiaries prior to distribution.

### VII

On September 30, 1959, each of the Greenspan trusts was amended so as to provide for a broader investment authority in the trustee. Prior to the amendment, the trustee's investment authority was limited to United States Government Bonds, Series E or Series H, or United States Government Bonds

of a similar nature. The amendment expanded this authority to include investments, when requested by Sidney Greenspan, in a limited partnership interest in any limited partnership which may be formed by Sidney Greenspan, and also, in the stock of any corporation organized by Sidney Greenspan. An option for redemption of this stock was provided for in the same manner as the stock of Robillwayne Corporation. No investments ever have been made by any of the Greenspan trusts pursuant to this expanded authority.

## VIII

On August 20, 1965, Robillwayne Corporation's board of directors considered the desirability of exercising the option to redeem the stock held by the Greenspan trusts so that corporate plans for a possible buy-out, amalgamation, or merger, and, the election of Sub-Chapter S tax status could freely be pursued. On October 19, 1965, the board resolved to exercise the option and to redeem all of Robillwayne Corporation's stock then held by the three trusts. It further was resolved that upon the redemption the purchased shares would be carried on the corporation's books as treasury stock. The entire impetus for the redemption came from Robillwayne Corporation and not from the trusts, trustee, or trust beneficiaries.

## IX

The redemption price of $29,737.90 for the stock held by each of the Greenspan trusts was determined by reference to the book value plus one year's net income before taxes of the corporation. This price had been proposed to the trustee on September 20, 1965, by Robillwayne Corporation's attorney, Mr. William F. Balter, who also was the corporation's secretary-treasurer. The investment department of the trustee reviewed the offer, along with the balance sheet and income tax return of the corporation, including a depreciation schedule, and then informed the trust investment committee that the proposed purchase price represented a fair value. The trust investment committee, after discussing the matter, then authorized the sale of the stock to the corporation on the basis of the proposed purchase price.

## X

The redemption price of $29,737.90 was to be paid, as to each of the Greenspan trusts, by $7,434.47 cash, plus a corporate promissory note for $22,303.43 dated October 27, 1965, payable on October 28, 1967, together with interest on the unpaid balance at the rate of 8% per annum. The note was paid off with respect to each trust as follows: $10,259.58 principal, plus interest to October 28, 1967, of $1,784.27, on October 20, 1967; $12,043.85 principal, plus interest to January 23, 1968, of $227.50, on January 23, 1968. The entire proceeds from the redemption have been retained and/or reinvested by the trustee for the sole benefit of the trust beneficiaries, and not for the benefit of either the trustors or the Robillwayne Corporation.

## XI

As of the beginning of the year in which the redemption occurred, Robillwayne's undistributed surplus was $133,165.73. The year's net profit after taxes was $36,709.16.

## XII

The redemption of Robillwayne stock was in no way related to or the result of a contraction of the corporate business. Following the redemption, Robillwayne Corporation elected Sub-Chapter S status under the Internal Revenue Code, commencing with the fiscal year of the corporation which began on November 1, 1965.

## XIII

Neither the trustee, trusts, nor beneficiaries of any of the Greenspan trusts ever had any interest, other than that of a creditor, in Robillwayne Corporation, from the time immediately following the

redemption through the present date. At no time either before or after the redemption, has either the trustee, trusts or beneficiaries of any of the Greenspan trusts, been an officer, director or employee of the Robillwayne Corporation.

### XIV

No stock in Robillwayne Corporation has ever been actually owned by either the trustee or by the Greenspan trust beneficiaries.

### XV

During the period 1955 through 1965, Robillwayne Corporation paid dividends to its shareholders in the total amount of $126,687.53, out of total earnings after taxes of $302,558.36.

### XVI

On or about April 14, 1966, plaintiff filed with the Internal Revenue Service the federal income tax returns for each of the Greenspan trusts for the calendar year 1965. Each return showed a net tax liability of $2,934.99, which sums were paid concurrently with the filing of the returns. On each return, the redemption of the Robillwayne Corporation stock was shown as $29,737.90 for the total sales price, $4,500.00 for the cost, and a resultant gain of $25,237.90. For tax purposes, this gain was reported on the installment basis under which only 84.86779% of the cash received in 1965, or $6,309.47, was recognized as long-term capital gain.

### XVII

On or about August 16, 1968, the District Director of Internal Revenue, Los Angeles, California, assessed plaintiff with additional federal income taxes for each of the Greenspan trusts in the amount of $13,024.39, together with interest in the amount of $1,786.76, for a total of $39,073.17 principal and $5,360.-28 interest, which sums were paid to the

Internal Revenue Service on July 26, 1968. The assessments were made on the theory that the amounts received by the Greenspan trusts were essentially equivalent to dividends and should have been reported as ordinary income.

### XVIII

Plaintiff timely filed its claims for refund with respect to the Greenspan trusts on June 19, 1969. More than six months had elapsed since the filing of the claims for refund when this action was commenced on January 23, 1970.

### XIX

It has been conceded by plaintiff that in light of the various mechanical prerequisites of Sections 302(b) (2), (3), and (4), which prerequisites manifestly have not been satisfied in this case, the only provision upon which plaintiff bases its contention that the redemption of the Robillwayne stock should be treated as an exchange, rather than as a corporate dividend, is Section 302(b) (1).

### XX

Any conclusion of law deemed as or properly constituting a finding of fact hereby is adopted as a finding of fact.

### CONCLUSIONS OF LAW

#### I

Under the dictates of the recent Supreme Court decision of United States v. Davis, 397 U.S. 301, 90 S.Ct. 1041, 25 L.Ed.2d 323 (1970), it is clear that in testing a redemption for dividend equivalency under Section 302(b)(1), the business purpose for the transaction is irrelevant and the attribution of ownership rules of Section 318 must be mechanically applied.[1]

#### II

Under *Davis, supra,* in order to qualify for preferred treatment under

---

[1]. This latter conclusion also finds direct support in Section 302(c) (1): " * * * section 318(c) shall apply in determining the ownership of stock for purposes of this section."

Section 302(b)(1), the redemption must result in a meaningful reduction of the shareholder's proportionate interest (voting power) in the corporation, with full consideration of the attribution of ownership rules in the determination of that reduction.

### III

In this case, immediately prior to the redemption, each one of the three trusts actually owned 15% of the corporation's stock and constructively owned another 55%, for a total interest of 70%. The constructive 55% ownership is the result of the application of Section 318(a)(1)(A) which states, "an individual shall be considered as owning the stock owned, directly or indirectly, by or for * * * (ii) his children, grandchildren, and parents," and Section 318(a)(3)(B)(i) which states, "stock owned, directly or indirectly, by or for a beneficiary of a trust * * * shall be considered as owned by the trust * * *." Accordingly, each child would have been deemed the owner of his parents' 55% of the stock which, in turn, would have been attributed to the trusts by way of the children-beneficiaries.

Immediately after the redemption, we end up with the somewhat anomolous result that each trust owned 100% of the corporation's stock solely by virtue of the application of the attribution of ownership rules. Since all of the stock actually owned by the trusts was redeemed, the beneficiaries' parents were left with 100% of the outstanding stock which is attributable through the children-beneficiaries to the trusts.[2]

Consequently, the redemption of the Robillwayne stock did not result in a meaningful reduction of the shareholder's (trust's) proportionate interest in the corporation.

### IV

Since none of the provisions in Section 302(b) apply to the redemption of the Robillwayne stock, the $29,737.90 received in 1965 from the corporation should have been treated as a distribution of Robillwayne's earnings and profits and taxable to the recipients as ordinary dividend income.

### V

Any finding of fact deemed or properly constituting a conclusion of law hereby is adopted as a conclusion of law.

### VI

Plaintiff's Complaint for Refund of Internal Revenue Taxes in this action should be dismissed and defendant should have its costs. Let judgment be entered accordingly.

### JUDGMENT

On February 11, 1971, at 10:00 A.M., this case was tried to the Court without a jury before the Honorable Irving Hill, United States District Judge.

On the basis of the Findings of Fact and Conclusions of Law on file in this matter,

It is hereby ordered, adjudged and decreed that defendant have judgment against plaintiff in this case and that plaintiff take nothing and that defendant be awarded its costs of suit.

---

2. The Government has conceded that were it not for the required application of the attribution of ownership rules, the redemption would have qualified as a complete termination of the trusts' interests in the corporation under Section 302 (b)(3).