*Decision will be entered under Rule 50.*

Stanley F. Grabowski Trust for Ronald Grabowski, United Bank and Trust Company, Trustee, et al.,[1] Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 6018–68—6020–68.   Filed July 19, 1972.

*David I. Pollowitz,* for the petitioners.
*Robert B. Dugan,* for the respondent.

#### OPINION

Irwin, *Judge:* Respondent determined deficiencies with respect to these consolidated cases for the taxable year ended February 28, 1965, in the following amounts:

| | |
|---|---|
| Docket No. 6018–68 | $4,886.95 |
| Docket No. 6019–68 | 4,830.52 |
| Docket No. 6020–68 | 4,886.95 |

[1] Cases of the following petitioners are consolidated herewith: Helen M. Grabowski Trust for Janet Grabowski, United Bank & Trust Co., Trustee, docket No. 6019–68; and Stanley F. Grabowski Trust for David Grabowski, United Bank & Trust Co., Trustee, docket No. 6020–68.

All of the facts have been stipulated and are found accordingly.

Petitioner, trustee for the three trusts in question here, had its principal place of business at 200 Main Street, Bristol, Conn., at the time the petitions herein were filed.

The Stanley Plating Co., Inc., was incorporated on October 1, 1947, with an authorized capital stock of $50,000 of common stock. At the time of incorporation, the stock issued and ownership thereof was as follows:

|  | Relationship to Stanley F. Grabowski | Number of shares |
|---|---|---|
| Stanley Grabowski | | 110 |
| Helen Grabowski | Wife | 109 |
| Michael Grabowski | Brother | 12 |
| Louis Grabowski | Brother | 12 |
| In treasury stock | | 195 |
| Total | | 438 |

Stanley Plating Co., Inc., amended its capital structure on March 31, 1955, after which its capital stock consisted of:

| | |
|---|---|
| 36,000 shares of common stock, at $2.50 par value | $90,000 |
| 30,000 shares of class A preferred stock, at $1 par value | 30,000 |
| 30,000 shares of class B preferred stock, at $1 par value | 30,000 |
| | 150,000 |

On April 1, 1955, a common stock dividend of 11 shares on every one then outstanding was declared. An amount of $75,075 was transferred from earned surplus to common stock to effect said stock dividend.

The subscribers to class A preferred and class B preferred, however, contributed new considerations for their stock.

Under the provisions of amended certificate of incorporation, the preferences, privileges, voting power, restrictions, or qualifications of class A preferred, class B preferred, and common stock were as follows:

*Class A Preferred*

1. *Dividend rights.*—The holders shall be entitled to receive from surplus or net profits as and when declared by the board of directors noncumulative dividends upon such shares at the rate of 6 percent per annum and no more, payable in preference and priority to the declaration or payment of any dividends upon common stock.

2. *Voting rights.*—Nonvoting.

3. *Rights on dissolution.*—Upon dissolution, after payment in full

of the par value of the class B shares plus any dividends declared on class B shares but unpaid thereon, then the class A shares shall be paid in full the par value of the shares held by them plus any dividends declared but unpaid thereon.

4. *Rights of corporation to retire stock.*—Directors can retire at any time by paying par value and dividends declared but unpaid in current year.

*Class B Preferred*

1. *Dividend rights.*—The holders shall be entitled to receive from surplus or net profits, after full noncumulative dividends on class A shall have been declared and paid or set apart for payment, noncumulative dividends, as and when declared by the board of directors upon such shares, at the rate of 6 percent per annum. During any 1 year, after class A and class B and common shall have received a dividend of 6 percent then class B shall participate with the common in any additional dividends declared by the board of directors.

2. *Voting rights.*—Nonvoting.

3. *Rights on dissolution.*—Upon dissolution, the holders shall be paid in full the par value of the shares held by them plus dividends declared but unpaid thereon before any amount shall be distributed among the holders of any other class of stock.

4. *Rights of corporation to retire stock.*—Directors can retire at any time by paying par value and dividends declared but unpaid in the current year.

*Common Stock*

1. *Dividend rights.*—The holders shall be entitled to a 6-percent dividend after class A and B are paid 6 percent. Then to participate with class B on any additional dividends during any such year.

2. *Voting rights.*—All voting rights.

3. *Rights on dissolution.*—Upon dissolution after paying class A and B par value plus current year dividends declared but unpaid the balance of the net assets.

On December 28, 1951, Stanley F. Grabowski created an irrevocable trust for his son Ronald, known as the Stanley F. Grabowski Trust for Ronald Grabowski. The corpus consisted of $5,500 in cash.

On December 28, 1951, Stanley F. Grabowski created an irrevocable trust for his son David, known as the Stanley F. Grabowski Trust for David Grabowski. The corpus consisted of $5,500 in cash.

The trusts for Ronald and David Grabowski each invested $5,200 in the class A preferred stock and $10,000 in the class B preferred stock of Stanley Plating Co., Inc., on May 31, 1957.

On April 24, 1962, Helen Grabowski (wife of Stanley Grabowski) created an irrevocable trust for her daughter Janet Grabowski. The corpus of said trust consisted of 5,200 shares of the class A preferred stock and 10,000 shares of the class B preferred stock of Stanley Plating Co., Inc.

On September 22, 1964, the shareholders of Stanley Plating Co., Inc., voted to redeem the class A and class B preferred stock issued and outstanding commencing on November 2, 1964. Said redemption at par value was completed prior to December 31, 1964.

As of September 30, 1964, and December 31, 1964, Stanley Plating Co., Inc., had assets, liabilities, and capital in the following amounts:

| Assets | Sept. 30, 1964 | Dec. 31, 1964 |
|---|---|---|
| Cash | $163,531.22 | $152,112.07 |
| Notes and accounts receivable | 88,704.05 | 76,835.89 |
| Inventories | 45,060.89 | 42,801.19 |
| Other current assets | 28,061.69 | 22,021.01 |
| Loans to stockholders | 3,861.21 | 1,011.40 |
| Other investments | 20,230.43 | 20,230.43 |
| Buildings and other fixed depreciable assets | 229,959.86 | 231,206.01 |
| Land (net of any amortization) | 22,101.32 | 22,101.32 |
| Other assets | 45,527.83 | 48,471.47 |
| Total assets | 647,038.50 | 616,790.79 |

| Liabilities and capital | Sept. 30, 1964 | Dec. 31, 1964 |
|---|---|---|
| Accounts payable | $15,265.14 | $13,101.63 |
| Mortgages, notes, and bonds payable in less than 1 year | 13,076.56 | 92,197.44 |
| Other current liabilities | 124,818.57 | 110,705.94 |
| Loans from stockholders | 5,124.36 | 5,124.36 |
| Mortgages, notes, and bonds payable in 1 year or more | 70,762.68 | |
| Other liabilities | 12,856.56 | 2,457.00 |
| Capital stock: | | |
| (a) Preferred stock | 50,600.00 | |
| (b) Common stock | 81,900.00 | 81,900.00 |
| Paid-in or capital surplus | | |
| Surplus reserve | 106,920.77 | 108,211.20 |
| Earned surplus and undivided profits | 165,713.86 | 203,093.22 |
| Total liabilities and capital | 647,038.50 | 616,790.79 |

On November 1, 1964, the issued and outstanding capital stock of Stanley Plating Co., Inc., was held by the following persons:

| Shareholder | Relationship to Stanley F. Grabowski | Number of shares | Percent ownership |
|---|---|---|---|
| *Common stock* | | | |
| Stanley F. Grabowski | | 13,200 | 40.3 |
| Helen M. Grabowski | Wife | 13,080 | 39.9 |
| Michael Grabowski | Brother | 2,760 | 8.4 |
| Louis Grabowski | Brother | 2,760 | 8.4 |
| Walter Grabowski | Brother | 480 | 1.5 |
| Joseph Kowalec | Brother-in-law | 480 | 1.5 |
| Total common stock | | 32,760 | 100.0 |
| *Class A preferred* | | | |
| Stanley F. Grabowski | | 2,000 | 9.8 |
| Trust for Ronald Grabowski | Son | 5,200 | 25.2 |
| Trust for David Grabowski | Son | 5,200 | 25.2 |
| Trust for Janet Grabowski | Daughter | 5,200 | 25.2 |
| Michael Grabowski | Brother | 1,022 | 4.9 |
| Louis Grabowski | Brother | 1,022 | 4.9 |
| Walter Grabowski | Brother | 178 | .9 |
| Joseph Kowalec | Brother-in-law | 178 | .9 |
| Charles Grabowski | Brother | 100 | .5 |
| Various others (five at 100 each) | | 500 | 2.5 |
| Total class A preferred | | 20,600 | 100.0 |
| *Class B preferred* | | | |
| Trust for Ronald Grabowski | Son | 10,000 | 33.3 |
| Trust for David Grabowski | Son | 10,000 | 33.3 |
| Trust for Janet Grabowski | Daughter | 10,000 | 33.3 |
| Total class B preferred | | 30,000 | 100.0 |

From March 31, 1955, the date of amended articles of incorporation, through 1960 the corporation did not pay dividends on any class of stock. From January 1, 1961, through the date of redemption of the preferred class A and B stock, dividends on the respective classes of stocks were as follows:

| | |
|---|---|
| Common | $20,527.56 |
| Class A preferred | 4,944.00 |
| Class B preferred | 11,235.00 |
| Total | 36,706.56 |

The total amount distributed in redemption of the two classes of Stanley Plating Co., Inc., preferred stock was $50,600. The trusts (for Ronald, David, and Janet) each received $15,200 during their taxable year ended February 28, 1965, from Stanley Plating Co., Inc., in redemption of said preferred stock, consisting of $5,200 for class A and $10,000 for class B preferred stock of Stanley Plating Co., Inc.

The only issue here involved is whether the amount received in payment for said preferred stock is essentially equivalent to a dividend

within the meaning of the Internal Revenue Code of 1954. There is no question that should we find the distribution herein essentially equivalent to a dividend, that Stanley Plating Co., Inc., had sufficient earnings and profits available for distribution in such a fashion.

Distributions to shareholders out of a corporation's earnings and profits are generally treated as taxable dividends under sections 301 [2] and 316 [3] of the Internal Revenue Code of 1954. With respect to distributions made by a corporation in redemption of its stock, however, section 302(b) provides for certain exceptions to this general dividend treatment. Under section 302(b), dividend treatment can be avoided if the redemption is not essentially equivalent to a dividend (subsec. (b)(1)); if the redemption is substantially disproportionate (subsec. (b)(2)); if the redemption completely terminates the shareholder's stock interest in the corporation (subsec. (b)(3)); or if the redemption is of stock issued in conjunction with certain railroad reorganizations (subsec. (b)(4)).

Subsections (b)(2) and (b)(4) are clearly inapposite here because the attribution rules of section 318 prevent the necessary reduction in voting power required by (b)(2) and the redeemed stock was not issued in one of the specified railroad reorganizations. The subsection (b)(3) complete-termination exception could only have applied in this fact pattern had a waiver of the family attribution rules (required by section 302(c)(2)(A)(iii)) been validly and legally filed by the petitioner-trustee in this case. No attempt to do so was made, however, hence this safe harbor of section 302(b) is not before this Court for scrutiny.

The redemption of the trusts' preferred stock, therefore, must be treated under the "essentially equivalent to a dividend" language of section 302(b)(1). In testing for dividend equivalency under this subsection, the Supreme Court in *United States* v. *Davis*, 397 U.S. 301 (1970), has now approved application of the "strict net effect" test, an approach which had been adopted by a number of circuits [4] and had

---

[2] SEC. 301. DISTRIBUTIONS OF PROPERTY.

(a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

[3] SEC. 316. DIVIDEND DEFINED.

(a) GENERAL RULE.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

[4] *Northup* v. *United States*, 240 F. 2d 304 (C.A. 2, 1957); *Ferro* v. *Commissioner*, 242 F. 2d 838 (C.A. 3, 1957).

been urged by the respondent as the proper standard to consider in such situations.[5] This test considers whether the shareholders would have received the identical payments had the redemption been a dividend. In essence, the test measures whether the distribution has altered the shareholder's control over the corporation or the shareholder's rights to future earnings. *Ballenger* v. *United States*, 301 F. 2d 192 (C.A. 4, 1962) ; *Himmel* v. *Commissioner*, 338 F. 2d 815 (C.A. 2, 1964) ; *Levin* v. *Commissioner*, 385 F. 2d 521 (C.A. 2, 1967). Davis made clear that (1) the attribution rules of section 318 must apply in testing for dividend equivalency under section 302(b)(1) ; (2) redemptions of stock of a sole shareholder (whether an "actual" or "constructive" sole shareholder) are always "essentially equivalent to a dividend" under this subsection; (3) a business purpose motivating the redemption is irrelevant in testing dividend equivalency; and (4) the exception to dividend treatment proffered by this subsection will only obtain if the redemption results in a "meaningful reduction of the shareholder's proportionate interest in the corporation."

When the "strict net effect" test is applied in this case we find that (1) the redemption caused no reduction in the trusts' proportionate constructive interest in Stanley Plating Co., Inc.; (2) had this distribution been instead a dividend, the trusts would have received more than they did in the actual redemption; and (3) the redemption caused an increase in the trusts' constructive interest in the net worth of the company. In light of these results, therefore, we must conclude that the distributions in question were "essentially equivalent to a dividend" under section 302(b)(1) of the Code and the respondent's determination must be sustained.

Immediately prior to and subsequent to the redemption the trusts did not actually own any of the common stock of Stanley Plating Co., Inc. However, each of the trusts constructively owned an 80.2-percent interest in the common stock of that company. The constructive ownership is the result of the application of section 318(a)(1)(A) which states, "An individual shall be considered as owning the stock owned, directly or indirectly, by or for * * * (ii) his * * * parents," and section 318(a)(3)(B)(i) which states, "Stock owned, directly or indirectly, by or for a beneficiary of a trust * * * shall be considered as owned by the trust." [6] Each child, therefore, would be deemed the owner of his parents' 80.2-percent interest in the Stanley Plating common stock, which, in turn, would be attributed to the trusts by way of the children-beneficiaries. The redemption of the Stanley Plating pre-

---

[5] Rev. Rul. 57-353, 1957-2 C.B. 223.

[6] Cf. *Thomas G. Lewis*, 35 T.C. 71 (1960), where this Court utilized the attribution rules in determining that a redemption of a portion of an estate's stock in cancellation of a decedent stockholder's indebtedness was a redemption essentially equivalent to a dividend under sec. 302(b).

ferred stock, however, in no way reduced this proportionate constructive interest which the trusts were deemed to own. With sufficient earnings and profits available for distribution to the shareholders and an absence of any reduction, let alone a meaningful reduction in the trusts' proportionate constructive interest, this very important *Davis* requirement is not satisfied.

Further, had the amount distributed in redemption herein been instead distributed as a dividend, each of the trusts would have received *more*, actually and constructively, than they did via the actual redemption and their relative interest in the net worth of the company would not have been enhanced. Each of the trusts received, actually and constructively, 34.1 percent of the $50,600 redemption distribution. Hypothetically, a dividend in the amount of $50,600 would have caused each of the trusts to receive, actually and constructively, 58.5 percent of the dividend distribution.[7] This reveals, therefore, that the trusts did

---

[7]

| Total distribution | $50,600 |
|---|---|

*Allocation of hypothetical dividend of $50,600 among classes of stock*

Par value

| | | |
|---|---|---|
| Class A | $20,600×6% = $1,236 | |
| Class B | 30,000×6% = 1,800 | |
| Common | 81,900×6% = 4,914 | |
| Total | | 7,950 |

| Amount of hypothetical dividend to be divided between class B preferred and the common stock (these two classes sharing in excess distribution after each class has received its 6-percent dividend) | 42,650 |
|---|---|

*Allocation of hypothetical dividend to each trust*

Par value

| | | |
|---|---|---|
| Class A [1] $7,200×6% | $432.00 | |
| Class B 10,000×6% | 600.00 | |
| Common [2] 65,700×6% | 3,942.00 | |
| Trust's share of excess distribution allocable to class B | [3] 6,795.72 | |
| Trust's share of excess distribution allocable to common | [4] 17,854.77 | |
| Total distribution to each trust | $29,624.49 | |

| Percentage of hypothetical dividend to each trust | [5] 58.5 |
|---|---|
| Percentage of actual redemption received by each trust | [6] 34.1 |

[1] 5,200 actually owned plus 2,000 by attribution from Stanley F. Grabowski.

[2] $65,700 = 26,280 (number of shares of common constructively owned by each trust) × $2.50 (par value, each share of common).

[3] $\frac{10,000}{62,760}$×42,650 = $6,795.72 (62,760 = number of shares of common and class B preferred shares sharing in the hypothetical excess distribution of $42,650).

[4] $\frac{32,760}{62,760}$×42,650 = $22,262.84×80.2% = $17,854.77.

[5] $\frac{\$29,624.49}{\$50,600.00}$ = 58.5%.

[6] $\frac{\$17,200}{\$50,600}$ = 34.1%

($17,200 = $5,200 from redemption of class A preferred
+ $2,000 from redemption of Stanley F. Grabowski's class A preferred constructively attributed to each trust
+ $10,000 from redemption of class B preferred).

not, as a result of the redemption, receive significantly more than they would have received if the amount had been paid out as a dividend.

The situation herein, consequently, is not akin to *Himmel, supra,* where it was found in a multiclass capitalization situation that the taxpayer would have received significantly less of a distribution had a dividend, and not a redemption, occurred. In *Himmel,* the fact that the taxpayer received more than he would have in a hypothetical dividend distribution was a significant factor which the court considered in concluding that the redemption was a sale. The instant case differs; it is on par with the situation in *Levin, supra,* where the redemption resulted in the taxpayer receiving less than she would have received of a hypothetical dividend and where this Court found *Himmel* inapplicable. Also, on September 30, 1964, prior to redemption, each of the trusts in the instant case had a $301,537.77 interest, actual and constructive, in the net worth of the company. On December 31, 1964, after the redemption, that interest was enhanced to $315,349.94.[8] So, the

---

[8] Shareholders' equity as of 9/30/64 (immediately prior to the redemption)_ $405,134.63

Capital stock:
|  |  |  |
|---|---|---|
| (a) Preferred | $50,600.00 | |
| (b) Common | 81,900.00 | |
| Paid-in or capital surplus | | |
| Surplus reserve | 106,920.77 | |
| Earned surplus and undivided profits | 165,713.86 | |
| | 405,134.63 | |

Allocation on liquidation:
|  |  |  |
|---|---|---|
| Class A preferred | $20,600.00 | |
| Class B preferred | 30,000.00 | |
| Total | | 50,600.00 |
| Allocation to common | | 354,534.63 |

Interest of each trust in the above allocations:
|  |  |
|---|---|
| Class A preferred | [1] $7,200.00 |
| Class B preferred | 10,000.00 |
| Common 80.2% × $354,534.63 | [2] 284,337.77 |
| Total prior to redemption | 301,537.77 |

Shareholders' equity as of 12/31/64 (immediately following completion of the redemption)_ 393,204.42

Capital stock:
|  |  |
|---|---|
| (a) Preferred | |
| (b) Common | 81,900.00 |
| Paid-in or capital surplus | |
| Surplus reserve | 108,211.20 |
| Earned surplus and undivided profits | 203,093.22 |
| | 393,204.42 |

Interest of each trust after completion of the redemption:
($393,204.42 × 80.2%) _ 315,349.94

[1] 5,200 actual; 2,000 by attribution.
[2] By attribution.

redemption herein caused no significant alteration in this interest either.

We do not decide whether compliance with the formula espoused in *Himmel* would necessarily satisfy the "meaningful reduction of the shareholders' proportionate interest" requirement of *Davis*. It is enough that such compliance is a minimum condition established by *Davis* and that such condition has not been met. Moreover our decision that the redemption in this case is essentially equivalent to a dividend is not mitigated by whatever business purpose the company achieved through the redemption. This consideration is no longer relevant. *United States* v. *Davis, supra.* The petitioner has correctly noted that the trusts are not sole shareholders (actual or constructive) in the company and that a not insubstantial minority interest exists. This distinction from *Davis*, however, in this situation, does not lead to a different result. The 80.2-percent constructive interest herein is one which dominates and controls the policies of the company. This measure of control is sufficient to determine the payment of dividends and to cause the redemption of stock for corporate ends. We cannot ignore the crucial fact that this proportionate constructive interest held by the trusts is not meaningfully reduced by the redemption.

Reviewed by the Court.

*Decisions will be entered for the respondent.*