No. 73–26. ALBERS, EXECUTOR, ET AL. *v.* COMMISSIONER OF INTERNAL REVENUE. C. A. 3d Cir. Certiorari denied.

MR. JUSTICE POWELL, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BLACKMUN join, dissenting.

The five petitioners in this case own virtually all the outstanding stock of a small corporation, A & S Transportation Co. (A & S). The company operates a barge. The barge fell into such disrepair as to require replacement, but A & S lacked the necessary resources and credit. A & S requested the Federal Maritime Commission to guarantee, as it is empowered by law to do,

a proposed first mortgage loan from a bank. Before the Commission would extend its guarantee, it required of A & S at least $150,000 of additional private capital. The Commission presented A & S with two options. A & S could resort either to subordinated debt or to the issuance of nonvoting, nondividend paying, noncumulative preferred stock unredeemable until full payment of the desired loan.

A & S chose the latter course. In proportion to their holdings of A & S common, petitioners in 1959 purchased $150,000 of preferred stock possessing all the attributes required by the Commission. The loan was then consummated with the Commission's guarantee, and A & S purchased a replacement vessel. By 1964 the loan was paid off in full. Having no further need for the $150,000, and in accord with the wishes of petitioners,[1] A & S redeemed the preferred stock in 1965 and 1966 in two equal installments. No premium was paid, and *petitioners received precisely the amount each had previously invested.* The Commissioner of Internal Revenue treated the redemptions as the receipt of ordinary income, taking the view that they were "essentially equivalent to a dividend" within the meaning of § 302 (b)(1) of the Internal Revenue Code of 1954, 26 U. S. C. § 302 (b)(1). Citing *United States* v. *Davis,* 397 U. S. 301 (1970), the Tax Court agreed. *Miele* v. *Commissioner,* 56 T. C. 556 (1971); *La Fera Contracting Co.* v. *Commissioner,* T. C. Memo 1971–161. The Court of Appeals for the Third Circuit affirmed without published opinions. *Miele* v. *Commissioner,* 474 F. 2d 1338 (1973); *La Fera Contracting Co.* v. *Commissioner,* 475 F. 2d 1395 (1973); *Spiniello* v. *Commissioner,* 475 F. 2d 1396 (1973).

---

[1] One may understand the desire of petitioners to have their capital contributions returned, as the preferred stock was nondividend paying.

On the above facts it seems plain that the redemption of preferred stock provided petitioners nothing more than a return of the capital they were compelled by the Commission to pay into A & S to obtain the additional financing the corporation needed to remain in business. To tax that return of capital at ordinary income rates is an extraordinary result, yet one that I recognize to be mandated by the full sweep of *United States* v. *Davis, supra.* Because of strong doubts as to the correctness of any decision that produces such a bizarre result, I would grant certiorari to reconsider *Davis.*[2]

Section 302 (b)(1) of the Code shelters from dividend treatment, and accompanying potential ordinary income consequences, any stock redemption that "is not essentially equivalent to a dividend."[3] A majority of the Court in *Davis* read that provision to mean that a stock redemption by a small, closely held corporation

---

[2] I am not unaware of the importance of *stare decisis*, especially with respect to the tax Code. Yet, even in the tax area, the Court has recognized that the policies underlying *stare decisis* do not require "adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." *Helvering* v. *Hallock,* 309 U. S. 106, 119 (1940).

[3] The section treats such redemptions as tax-recognizable exchanges of stock, which generally means that the capital gains provisions are applicable, to the extent that there is any return above basis. Section 302 provides, in pertinent part:

"Distributions in redemption of stock.

"(a) General Rule. If a corporation redeems its stock . . . , and if paragraph (1) . . . of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

"(b) Redemptions treated as exchanges.

"(1) Redemptions not equivalent to dividends. Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend."

is "*always* 'essentially equivalent to a dividend' " where there is no "change in the relative economic interests or rights of the stockholders." 397 U. S., at 307, 313 (emphasis added). Undoubtedly the Court sought to promote ease of administration through adoption of a simplistic, *per se* rule. Yet the Court explicitly recognized that the weight of authority in the lower federal courts was contrary to its mechanical approach. *Id.*, at 303 n. 2. Furthermore, the Court conceded that the "legislative history is certainly not free from doubt." *Id.*, at 311.

In my view, the result produced by *Davis* in this case is justified neither by the language of the Code nor by the legislative history, and certainly not by precedent prior to *Davis*. In these circumstances, ease of administration is too high a price to pay for the presumably unforeseen and undeniably harsh consequences visited on these and similarly situated taxpayers.

The Tax Court noted petitioners' position "that the preferred stock was no longer needed after the loan had been paid in full and that redemption of the stock was consistent with the business purpose for which the stock was issued." *Miele* v. *Commissioner*, 56 T. C., at 567. The Tax Court did not refute the factual correctness of this position, or consider whether there had been a tax evasion motivation.[4] Rather, that court simply disregarded all factual considerations as immaterial to an application of the *Davis per se* rule:

> "We consider [petitioners'] argument as having been foreclosed and the issue determined by the case of *United States* v. *Davis*, 397 U. S. 301 (1970).

---

[4] No finding was made by the Tax Court, for example, that an earned surplus was available from which ordinary dividends could have been paid.

In *Davis,* the United States Supreme Court held that a redemption without a change in the relative economic interests or rights of the stockholders is always essentially equivalent to a dividend under section 302 (b)(1). It is the effect of the redemption and not the purpose behind it which is determinative of dividend equivalence." *Ibid.* (Citations omitted.)

MR. JUSTICE DOUGLAS, dissenting in *Davis* with the concurrence of THE CHIEF JUSTICE and MR. JUSTICE BRENNAN, viewed the majority opinion as reading § 302 (b)(1) out of the Code: ·

"When the Court holds it [the redemption under consideration in *Davis*] was a dividend, it effectively cancels § 302 (b)(1) from the Code. This result is not a matter of conjecture, for the Court says that in the case of closely held or one-man corporations a redemption of stock is 'always' equivalent to a dividend." 397 U. S., at 314.

The Tax Court's decision in this case abundantly bears out MR. JUSTICE DOUGLAS' view. In light of the deliberate retention of the "essentially equivalent to a dividend" language in the 1954 revision of the Code, most courts prior to *Davis* had assumed that § 302 (b)(1) required a factual determination as to the business purpose of the stock redemption.[5] Had such a factual inquiry been made in this case, it is evident that the result would have been different.

In addition to the presence of a legitimate business purpose and the absence of any evidence of tax evasion, the preferred stock in question here was nondividend paying—a highly unusual provision for a preferred

---

[5] See cases cited in *United States* v. *Davis,* 397 U. S. 301, 303 n. 2 (1972).

stock. Thus petitioners, having been induced by the Commission to advance additional private capital to A & S, found themselves either locked in without income on their investment or compelled, as the price of recouping it, to pay taxes at ordinary income rates on a nonexistent gain. It is difficult to think of a more unjust result, and yet this is the inevitable consequence of the sweeping *Davis* requirement that a redemption "always" be deemed " 'essentially equivalent to a dividend' " in the absence of "a change in the relative economic interests or rights of the stockholders." 397 U. S., at 307, 313.[6]

---

[6] This one qualification (namely, a change in the relative economic interests or rights of stockholders) may immunize from *Davis* consequences the larger corporations, where a congruity of interest between common and preferred stockholders is found far less frequently than in the family type of small corporations. But even where it can fairly be said (and often the facts as to this are ambiguous) that there has been no such change, this does not mean that minority stockholders are not severely penalized by the *Davis* rule. In this case, the Tax Court noted that the redemption was made at the insistence of petitioners, who were in the unhappy position of holding nondividend preferred stock. But nothing in *Davis* protects a minority stockholder in a close corporation (and their number is legion) who may have little or no influence as to whether or when preferred stock is redeemed. If the majority shareholders in such a corporation effect a *pro rata* redemption, a minority shareholder has no means to avoid *Davis* consequences In this connection, the language of the Senate Finance Committee in restoring the "essentially equivalent" language to § 302 of the Code is relevant. The Senate Committee stated that the House bill, which had deleted this language, "appeared unnecessarily restrictive, particularly, in the case of redemptions of preferred stock which might be called by the corporation without the shareholder having any control over when the redemption may take place." S. Rep. No. 1622, 83d Cong., 2d Sess., 44 (1954). See *United States* v. *Davis, supra,* at 310. The truth is that minority shareholders, even in close corporations, frequently have no such control.

One may recognize the tax-avoidance concern underlying the Court's opinion in *Davis* [7] without concluding that the only remedy with respect to closely held corporations is "always" to tax stock redemptions as dividends without regard to facts and circumstances. It may indeed have been reasonable to create a rebuttable presumption in favor of the Government, but it is difficult to see a justification for a result as harsh and inequitable as that often produced by the *Davis* rule. Moreover, if Congress' purpose was to enact the *Davis per se* rule, it could have been expressed in the simplest language. [8] As the Court notes in *Davis*, the Senate Finance Committee deliberately chose not to take that option. *Id.*, at 310–311.

In my view the *Davis* rule, often a trap for unwary investors in small businesses and facially contrary to the relevant Code provision, should be reconsidered.

---

[7] See B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders 9–2 (3d ed. 1971).

[8] It has been suggested that since *Davis* was decided March 23, 1970, Congress has had more than three years to repudiate or ameliorate the *Davis per se* rule. With all respect, this suggestion seems unrealistic. Congress has had under consideration during this period a general revision of the Code as well as a broad re-examination of many of the fundamental assumptions underlying the present Code. It is unlikely that piecemeal adjustments would have been made during this period of study and re-examination. Furthermore, the *Davis* rule falls most heavily on small family corporations unlikely to have specialized tax counsel capable of warning that *Davis* has converted § 302. (b) (1) into "a treacherous route to be employed only as a last resort." B. Bittker & J. Eustice, *supra* n. 7, at 9–9. It is these very corporations that are least likely to make their voices heard in Congress, since they have limited "lobbying" capabilities.