# 398

ROBIN HAFT TRUST, ESTHER J. FOSTER, EDWARD CREIGER, AND LEWIS H. WEINSTEIN, TRUSTEES, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5879-71—5882-71. Filed December 27, 1973.

*Lewis H. Weinstein, Norman H. Wolfe,* and *Louis P. Georgantas,* for the petitioners.

*Barry J. Laterman,* for the respondent.

SIMPSON, *Judge:* In these consolidated cases, the respondent determined the following deficiencies in the petitioners' Federal income taxes for the year 1967:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 5879-71 | Robin Haft Trust | $17, 445. 49 |
| 5880-71 | Wendy Laura Haft Trust | 17, 445. 49 |
| 5881-71 | Lisa Ann Haft Trust | 17, 445. 49 |
| 5882-71 | Daniel Foster Haft Trust | 17, 445. 49 |

The issues which must be decided are whether the redemption of certain stock held by the petitioners (1) was not essentially equivalent to a dividend under section 302(b)(1) of the Internal Revenue Code of 1954,[2] or (2) resulted in a complete termination of their interest in the corporation under section 302(b)(3).

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners are the Robin Haft Trust, the Wendy Laura Haft Trust, the Lisa Ann Haft Trust, and the Daniel Foster Haft Trust; they were created under the laws of the Commonwealth of Massachusetts, and had their principal office in Leominster, Mass., at the

---

[1] Cases of the following petitioners are consolidated herewith : Wendy Laura Haft Trust, Esther J. Foster, Edward Creiger, and Lewis H. Weinstein, Trustees, docket No. 5880-71; Lisa Ann Haft Trust, Esther J. Foster, Edward Creiger, and Lewis H. Weinstein, Trustees, docket No. 5881-71; Daniel Foster Haft Trust, Esther J. Foster, Edward Creiger, and Lewis H. Weinstein, Trustees, docket No. 5882-71.

[2] All statutory references are to the Internal Revenue Code of 1954.

time of filing the petitions herein. Their Federal income tax returns for the year 1967 were filed with the district director of internal revenue, Boston, Mass.

In 1956, Joseph C. Foster's daughter, Marcia, married Burt Haft. Two children were born of this marriage—Robin, born December 29, 1957, and Daniel, born September 16, 1961. Mrs. Haft had two older children—Lisa, born September 15, 1953, and Wendy, born April 8, 1955—by her first husband, Lawrence Hausman, who died before her marriage to Burt Haft. Burt Haft legally adopted these two children.

During the marriage of Marcia to Burt Haft, he was an officer, stockholder, and employee of the Haft-Gaines Co. (the corporation). During the taxable year 1967, the corporation was a Delaware corporation with its principal office in Ft. Lauderdale, Fla. After the marriage of his daughter to Burt Haft, Mr. Foster loaned $200,000 to the corporation and purchased 100,000 shares of its common stock.

On January 2, 1962, Mr. Foster created the trusts, and on or about January 13, 1962, he transferred, without consideration, to each trust 25,000 shares of the stock of the corporation. Thereafter, he owned no shares of stock of the corporation. The original trustees were Mr. Foster, Esther J. Foster, his wife, and Alan R. Trustman. All of the original trustees of the trusts remained in office continuously from the date of the formation of the trusts throughout 1967, the taxable year in issue. Because of the resignation of Mr. Trustman on December 19, 1968, the death of Mr. Foster on November 10, 1971, and the appointment of successor trustees, the present trustees of each of the trusts are Esther J. Foster, Edward Creiger, and Lewis H. Weinstein. The trusts are identical in all respects, except for the names of the trusts and their beneficiaries, and the financial and income tax data applicable to each trust is identical.

When the trusts were created, there were 500,000 shares of the stock of the corporation outstanding. One hundred thousand shares were owned by Burt Haft; 100,000 shares by Richard Haft, his brother; 100,000 shares by Jack Gaines, his brother-in-law; and 100,000 shares by Abraham Haft, his father. Sometime after January 2, 1962, Abraham Haft transferred all his stock in the corporation to a trust for the benefit of his children, Burt Haft, Richard Haft, and Norma Gaines (the wife of Jack Gaines), in equal proportions.

In November 1966, Marcia Haft commenced divorce proceedings against Burt Haft. In the course of the divorce proceedings, each made serious and bitter charges and countercharges about the other. In order to separate their financial interests and provide for their future relationship, several negotiating sessions took place. Both parties were represented by lawyers or accountants during the meetings. Mr. Foster, Burt Haft, and Mr. Gaines also participated at times.

Disputes characterized the discussions that led to the property settlement between Mr. and Mrs. Haft. When Mrs. Haft initiated the divorce, Burt Haft moved his residence from the house they had been occupying in Bay Harbor, Miami Beach, Fla., and did not have contact with the children until 6 or 7 months later, although he was still residing in Florida during this period. Sometime after her divorce and before 1970, Marcia Haft remarried. Thereafter, she and her new husband moved to New York, taking the children with them. After the divorce was granted on June 26, 1967, Burt Haft rarely saw the children; he did not see them at all from the time of the divorce until 1971. After 1971, they visited him in Florida; he saw them at Christmas of 1972. After November 1966, he did not pay support for the children until a court decree ordered him to do so; he ceased paying support entirely in the middle of 1970.

At the same time the divorce proceedings were taking place, Mr. Foster and the trusts terminated their financial involvement in the corporation. There were negotiations concerning retirement of the debt owed by the corporation to Mr. Foster, and it was finally paid in March 1967. There were also negotiations respecting the termination of the trusts' stock interest. The corporation originally offered $183,000 for all the trusts' shares, but in a subsequent meeting, the offer was raised. On June 17, 1967, it was agreed that the trusts' shares would be redeemed for $250,000 plus 6-percent interest, if the corporation chose to pay the purchase price in installments over a period of years, and $200,000 plus 6-percent interest, if the entire purchase price was paid on or before February 1, 1968. The corporation agreed that while the obligation was outstanding, it would not pay dividends, would not pay compensation in excess of $200,000 to its shareholder-employees, would not recapitalize, and would not dispose of most or all of its assets. The corporation elected to complete payment for the stock in 1967.

Immediately before the redemption of the stock on June 17, 1967, the stock of the corporation was owned as follows:

| | Shares | | Shares |
|---|---|---|---|
| Burt Haft | 100,000 | Robin Haft Trust | 25,000 |
| Richard Haft | 100,000 | Wendy Laura Haft Trust | 25,000 |
| Jack Gaines | 100,000 | Lisa Ann Haft Trust | 25,000 |
| Abraham Haft Trust for the benefit of Burt Haft, Richard Haft, and Norma Gaines | 100,000 | Daniel Foster Haft Trust | 25,000 |
| | | Total | 500,000 |

After the redemption, only 400,000 shares of the stock of the corporation were outstanding.

The corporation's Federal income tax return for the fiscal year during which the petitioners' stock was redeemed indicated that it had a

balance of unappropriated retained earnings of $1,353,219.27 at the beginning of such fiscal year and $1,514,557.18 at the end of such fiscal year.

In their Federal income tax returns for the year 1967, the petitioners reported the gains from the redemption as long-term capital gains. In his notices of deficiency, the respondent determined that the gains were ordinary income.

### OPINION

We must decide whether the redemption should be treated as an exchange of stock under section 302(a) so that the gains are taxable as long-term capital gains, or whether such gains represented dividends taxable under sections 302(d) and 301 as ordinary income.

Section 302(a) provides, in part, that if "a corporation redeems its stock * * * and if paragraph (1) * * * [or] (3) * * * of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock." Paragraph (1) of section 302(b) states that "Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend." Paragraph (3) of section 302(b) states that "Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder." Section 302(d) provides, in part, that if "a corporation redeems its stock * * * and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies."

Section 302(c)(1) provides that, except as provided in paragraph (2), the attribution rules of section 318 shall be applied in determining the ownership of stock for purposes of applying the rules of section 302. Section 318(a)(1)(A) provides that an individual shall be considered as owning the stock owned by his spouse, parents, and children; section 318(a)(2)(B)(i) provides that beneficiaries of a trust shall be considered as owning the stock owned by the trust; and section 318(a)(3)(B)(i) provides that a trust shall be considered to own the stock owned by its beneficiaries. However, under section 302(c)(2), the attribution rules of section 318 are not applicable when there is a complete termination of a shareholder's interest under section 302(b) (3), if certain conditions are satisfied, including the requirement that:

(iii) the distributee, at such time and in such manner as the Secretary or his delegate by regulations prescribes, files an agreement to notify the Secretary or his delegate of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph. [Sec. 302(c)(2)(A) (iii).]

The petitioners take the position that their interests in the corporation were completely terminated and that, accordingly, the distributions received by them in redemption of their stock were not

essentially equivalent to a dividend under section 302(b)(1). They argue that the redemption occurred because of the controversy between the Haft and Foster families and that because of that controversy, the attribution rules of section 318 are not applicable. In the alternative, they contend that even if the attribution rules are applied, there was a meaningful reduction in their interest in the corporation so that the redemption should be treated as an exchange and not a distribution of a dividend. Finally, they assert that they had good cause for not filing the agreement referred to in section 302(c)(2), and consequently, that requirement should be waived and the attribution rules should not be applied.

The petitioners argue that attribution should not be applied when there has been a "family fight" and there is hostility between the members of the family. In support of that contention, they rely upon our decision in *Estate of Arthur H. Squier*, 35 T.C. 950 (1961). In that case, the Court relied, in part, on the "sharp cleavage" between the various shareholders of the corporation when the redemption took place in holding that the payment was not essentially equivalent to a dividend. The petitioners also point out that the Court of Appeals for the First Circuit, where this case arose, has said, with respect to the applicability of the attribution rules, "their imposition is not inflexible and if it can be demonstrated that discord exists in a family relationship which would make attribution unwarranted, they will not be applied." *Bradbury* v. *Commissioner*, 298 F. 2d 111, 116–117 fn. 7 (C.A. 1, 1962), affirming a Memorandum Opinion of this Court. In the present case, there is some question as to how much hostility actually existed between Mr. Haft and his children, and a question as to whether the relevant relationship is that between Mr. Haft and his children or that between him and the trustees. Yet, it is clear that the redemption took place as a part of the arrangements for the divorce and for the property settlement between Mr. and Mrs. Haft; and consequently, we will consider whether the existence of such circumstances affects the applicability of the attribution rules of section 318.

Since the decisions in *Squier* and *Bradbury*, the Supreme Court decided *United States* v. *Davis*, 397 U.S. 301 (1970), in which it held that the attribution rules are applicable for purposes of determining whether a distribution is essentially equivalent to a dividend under section 302(b)(1). 397 U.S. at 308. That holding has been followed and applied in a series of subsequent decisions. *William A. Sawelson*, 61 T.C. 109 (1973); *Stanley F. Grabowski Trust*, 58 T.C. 650, 659 (1972); *Fehrs Finance Co.*, 58 T.C. 174 (1972), affd. 487 F. 2d 184 (C.A. 8, 1973). However, the petitioners seek to distinguish such cases on the ground that none of them involved a "family fight" such as occurred in the present case.

A careful review of the opinion of the Supreme Court in *Davis* convinces us that the petitioners' argument is inconsistent with the statements and rationale of that opinion. Before the enactment of the 1954 Code, the attribution rules were sometimes applied, and sometimes not applied; to avoid that uncertainty, section 302 expressly made the attribution rules applicable for purposes of determining whether a distribution in redemption should be treated as a dividend. H. Rept. No. 1337, 83d Cong., 2d Sess., p. A96 (1954). The Court relied upon "the plain language of the statute" in concluding that the attribution rules were applicable. 397 U.S. at 306. The Court was obviously convinced that in enacting the rules of section 302, Congress sought to provide definite and specific rules and to avoid the uncertainties which had arisen under the earlier law. In considering the argument that the redemption in that case was motivated by a business purpose, the Court reviewed the legislative history and concluded that the legislative objective was to provide definite rules for determining when a redemption should be treated as an exchange, and to carry out that objective, the Court held that the business purpose for the redemption was irrelevant. The Supreme Court recently turned down a request to reconsider its holding in *Davis*, *Albers* v. *Commissioner*, 414 U.S. 982 (1973), denying certiorari in *Miele* v. *Commissioner*, 474 F. 2d 1338 (C.A. 3, 1973), affirming 56 T.C. 556 (1971).

If the applicability of the attribution rules depended upon the feelings or attitudes among the members of a family, it would then be necessary to inquire into whether there was hostility or animosity among them, whether such discord was serious, and whether it would actually or likely impair the ability of one member of the family to influence the conduct of other members. By the terms of the statute, the attribution rules are applicable irrespective of the personal relationships which exist among the members of a family, and an interpretation of the statute which made their applicablility depend upon whether there was discord among the members of the family—or the extent of any such discord—would frustrate the legislative objective and would be clearly inconsistent with the language and the rationale of *Davis*. For these reasons, we believe that in view of the Supreme Court's opinion in *Davis*, the petitioners' reliance upon *Squier* and *Bradbury* is misplaced, and we hold that the applicability of the attribution rules is not affected by the circumstances which led to the redemption.

Under *Davis*, the sole test for determining whether a distribution in redemption is essentially equivalent to a dividend is whether the redemption results "in a meaningful reduction of the shareholder's proportionate interest in the corporation." *United States* v. *Davis*, 397 U.S. at 313. The respondent applied the attribution rules and con-

cluded that immediately before the redemption, each of the petitioners owned, actually and constructively, $31\frac{2}{3}$ percent of the corporation's stock and that after the redemption, each owned $33\frac{1}{3}$ percent of such stock. His conclusion was based on the following computation: Before the redemption, each petitioner actually owned 25,000 shares; under section 318(a)(3)(B), each petitioner should be treated as owning the stock owned by its beneficiary, and under section 318(a)(1), each beneficiary should be considered as owning the 100,000 shares owned by Burt Haft and the $33,333\frac{1}{3}$ shares attributed to him under section 318(a)(2)(B) by reason of his interest in the Abraham Haft trust; thus, each petitioner, actually and constructively, owned $158,333\frac{1}{3}$ of the 500,000 outstanding shares.

After the redemption, each petitioner is treated as owning the $133,333\frac{1}{3}$ shares actually and constructively owned by Burt Haft; that is, it is considered to own $133,333\frac{1}{3}$ of the 400,000 shares then outstanding. The petitioners challenge that application of the law; they contend that since the petitioners actually owned none of the stock after the redemption, section 302(b)(1) should be applied by looking at the stock actually and constructively owned by Burt Haft before and after the redemption. Under their theory, Burt Haft, before the redemption, should be treated as owning, in addition to the 100,000 shares actually owned by him, $33,333\frac{1}{3}$ shares attributed to him by reason of the trust set up by his father and the 100,000 shares held by the petitioners and attributed to him because the beneficiaries of such trusts were all his children. Under that theory, he is considered as owning $233,333\frac{1}{3}$ of the 500,000 outstanding shares, or $46\frac{2}{3}$ percent; after the redemption, he is considered as owning only $133,333\frac{1}{3}$ shares of the 400,000 then outstanding, or $33\frac{1}{3}$ percent.

It seems clear to us that the petitioners' theory is not in accordance with the law. Under section 302(b)(1) and the *Davis* holding, it is necessary to determine the stock owned by each of the petitioners, actually and constructively, before and after the redemption, and the respondent's computations do so and properly apply the rules of the statute. On the other hand, the petitioners' theory does not follow the rules of the statute and has the effect of attributing to each of the petitioners the stock owned by the other petitioners. Such attribution represents intrasibling attribution, which is not in accordance with section 318. *Stanley F. Grabowski Trust*, 58 T.C. 650 (1972); *Title Insurance & Trust Co.* v. *United States*, 326 F. Supp. 617 (C.D. Cal. 1971), affd. 484 F. 2d 462 (C.A. 9, 1973); sec. 1.318–4(b), Income Tax Regs.; Ringel, Surrey & Warren, "Attribution of Stock Ownership in the Internal Revenue Code," 72 Harv. L. Rev. 209 (1958). The petitioners also point out that in *Davis, Fehrs Finance*, and *Grabowski*, the taxpayers held, or were considered as holding, con-

trolling interests in the corporations, but we perceive no reason as to why that factual difference should make any difference in the legal conclusion. The test still is whether the redemption resulted in a meaningful reduction in the shareholders' interests in the corporation, and we hold that the redemption of the petitioners' stock did not result in such a reduction in their interests in the corporation. See *John D. Gray*, 56 T.C. 1032 (1971).

Section 302(b)(3) establishes a "safe harbor" for a shareholder whose entire interest in a corporation is redeemed by providing that such a redemption shall be treated as an exchange. However, in determining whether there has been a redemption of a shareholder's entire interest in a corporation, the attribution rules of section 318 are applicable, unless the conditions of section 302(c)(2) are satisfied, including the filing of the agreement referred to in section 302(c)(2)(A)(iii). If the petitioners had met such requirements, the attribution rules would not have been applicable and the redemptions would have qualified under section 302(b)(3). Yet, the petitioners have not filed the agreement under section 302(c)(2)(A)(iii). They assert that before our decision in *Lillian M. Crawford*, 59 T.C. 830 (1973), the respondent took the position that an estate or trust could not file such an agreement (see Rev. Rul. 68-388, 1968-2 C.B. 122, and Rev. Rul. 59-233, 1959-2 C.B. 106), and that, therefore, it would have been useless for them to attempt to file the agreement. They urge that under such circumstances, the filing of the agreement should be waived and they should be treated as having complied with the requirements of section 302(c)(2).

Although the respondent's regulations require the agreement to be filed with the return, a number of cases have held that there has been substantial compliance with the requirement even though the agreement was not filed with the return but was filed subsequently. *United States v. Van Keppel*, 321 F. 2d 717 (C.A. 10, 1963); *Pearce v. United States*, 226 F. Supp. 702 (W.D. N.Y. 1964); *Georgie S. Cary*, 41 T.C. 214 (1963). Yet, when we were urged to overlook the requirement altogether, we held that we could not do so; Congress required an agreement to be filed, and we could not nullify the statutory requirement. *Fehrs Finance Co.*, 58 T.C. 174 (1972). Nor could the requirement be satisfied by filing the agreement after our decision in the case. *Fehrs Finance Co. v. Commissioner*, 487 F. 2d 184 (C.A. 8, 1973). Furthermore, we find no reason to apply *Columbia Iron & Metal Co.*, 61 T.C. 5 (1973), to this case. In that case, we held that the petitioner was entitled to a charitable deduction because it had substantially complied with the pertinent statutory section and regulations. In the present case, the petitioners have never filed the agreement, nor have they attempted to do so. In their briefs, they offered to file the agree-

ment, but it is clear that a mere offer falls far short of substantial compliance with the filing requirement. Even though the respondent insisted that the agreement must be filed with the return, taxpayers have not been discouraged from filing their agreements after their returns. *United States* v. *Van Keppel, supra; Pearce* v. *United States, supra; Georgie S. Cary, supra;* but see *Archbold* v. *United States,* 201 F. Supp. 329 (D.N.J. 1962), affirmed per curiam 311 F. 2d 228 (C.A. 3, 1963). In like manner, the petitioners could have filed the agreement in this case, notwithstanding the respondent's position, and we cannot overlook their failure to do so and cannot waive the requirement of the statute. *Fehrs Finance Co., supra.* Accordingly, we hold that the requirements of section 302(c)(2) have not been satisfied, that the attribution rules of section 318 are applicable, and that the redemption does not qualify under section 302(b)(3).

The respondent requested a finding of fact with respect to the earnings and profits of the corporation based on the information contained in its Federal income tax return for the fiscal year in which the redemption took place. The petitioners challenged the requested finding on the grounds that the tax return was not the best evidence and asserted that the respondent had the burden of computing the earnings and profits of the corporation from its books and records. We reject the petitioners' arguments. The tax return filed by the corporation constitutes evidence of the facts set forth therein. 28 U.S.C. sec. 1732 (1970); *Palmer* v. *Hoffman,* 318 U.S. 109 (1943). Furthermore, since the respondent has determined that the distributions to the petitioners in redemption of their stock constituted dividends, the petitioners, and not the respondent, have the burden of proving that such distributions were not dividends, and if they wish to assert that the corporation had inadequate accumulated or current earnings and profits to cause the distributions to be taxable as dividends, the petitioners have the burden of establishing such fact. Rule 32, Tax Court Rules of Practice; *Welch* v. *Helvering,* 290 U.S. 111 (1933). Consequently, based on the information contained in the corporation's tax return and the petitioners' failure to furnish any contrary evidence, we find and hold that the corporation had accumulated or current earnings and profits in excess of $200,000, the total amount of the distributions to the petitioners in redemption of their stock.

*Decisions will be entered for the respondent.*