LILLIAN M. CRAWFORD AND ESTATE OF WALTER M. CRAWFORD, DECEASED (BY JACK B. CRAWFORD, EXECUTOR), PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF WALTER M. CRAWFORD, DECEASED (BY JACK B. CRAWFORD, EXECUTOR), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6770–70, 6771–70. Filed March 19, 1973.

*Hilbert P. Zarky*, for the petitioners.

*Jonathan A. Brod* and *Alfred C. Bishop, Jr.*, for the respondent.

IRWIN, *Judge:* Respondent determined deficiencies in the income taxes of petitioners; and by amendment to his answers such deficiencies were increased to the following amounts:

| Docket No. | Year | Amount |
|---|---|---|
| 6770-70 | 1965 | $176, 734 |
| 6771-70 | FYE July 31, 1966 | 87, 294 |

Respondent has conceded docket No. 6770-70.[1] The remaining alternative issues for decision are: (1) Whether the Estate of Walter M. Crawford was eligible to waive the family attribution rules of section 318(a)(1)[2] under section 302(c)(2); or (2) whether the redemptions of the stock owned by the estate were not essentially equivalent to dividends under section 302(b)(1).

FINDINGS OF FACT

Petitioner is the Estate of Walter M. Crawford. Jack B. Crawford, a resident of Long Beach, Calif., at all relevant times, is the duly appointed executor of petitioner. Petitioner filed a timely U.S. fiduciary income tax return for its fiscal period ended July 31, 1966, with the district director of internal revenue, Los Angeles, Calif.

Lillian M. Crawford (Lillian) and Walter M. Crawford (Walter), deceased, filed a timely joint income tax return for the calendar year 1965 with the district director of internal revenue, Los Angeles, Calif. At all relevant times Lillian has resided in Long Beach, Calif.

---

[1] Respondent originally determined a deficiency against Lillian because her sec. 302(c)(2) agreement was not filed with her original return for 1965. The entire trial centered around this issue which respondent conceded in his original brief. No fact was developed at trial which could not have been stipulated. Naturally, respondent may adopt any trial strategy that he chooses, and we welcome settlements by the parties. On the other hand, we are not convinced that respondent gave adequate consideration to the parties' and the Court's time in pressing for a trial on the deficiency against Lillian.

[2] All statutory references are to the Internal Revenue Code of 1954, as amended.

Hawaiian Ocean View Estates (hereafter referred to as HOVE) is a Nevada corporation. Prior to August 16, 1965, HOVE had issued and outstanding 1,050 shares of common stock. Of these shares, 350 of them were owned by Walter M. Crawford and his wife, Lillian M. Crawford, as their community property. Also, 350 shares of such stock were owned by Jack B. Crawford, and the remaining 350 shares were owned by Don D. Crawford. Jack B. Crawford and Don D. Crawford are the sons of Walter M. and Lillian M. Crawford.

Crawford Oil Corp., which was formerly known as Sky Line Oil Co. (hereafter referred to as COCO), is a California corporation. Prior to August 16, 1965, COCO had issued and outstanding 6 shares of common stock. Two shares of such stock were owned by Walter M. Crawford and Lillian M. Crawford, as their community property. Two shares of such stock were owned by Jack B. Crawford, and 2 shares of such stock were owned by Don D. Crawford.

Prior to Walter M. Crawford's death, Jack B. Crawford was president of COCO and secretary-treasurer of HOVE, while Don D. Crawford was president of HOVE and secretary-treasurer of COCO. However, Walter M. Crawford and his two sons ran the two corporations as "an even three-way split."

In 1962 the Crawfords entered into two stock purchase agreements which provided for the disposition of the stock of a shareholder of HOVE or COCO at the shareholder's death. In pertinent part these agreements provided that, if Walter died and also predeceased Lillian, all of the stock owned by him and Lillian as community property would be offered to the respective corporations for redemption.

Walter died on August 16, 1965. Lillian was and is the sole beneficiary of his estate.

Pursuant to the 1962 stock purchase agreement COCO redeemed all the shares of its stock previously owned by Walter and Lillian. Thereafter, until December 31, 1968, Jack B. Crawford and Don D. Crawford owned all the issued and outstanding shares of stock of COCO. On December 31, 1968, Jack B. Crawford and Don D. Crawford transferred all of the shares of stock in COCO to Commonwealth United Corp. in exchange for stock in Commonwealth United Corp.

During Lillian's calendar year 1965 and during COCO's fiscal year ended June 30, 1966, COCO, in consideration of the redemption of its shares of stock in which Lillian had a community property interest, made a distribution to Lillian, having a then-discounted value of $263,421.17.

During the fiscal year ended July 31, 1966, of petitioner and during COCO's fiscal year ended June 30, 1966, COCO, in consideration of the redemption of its shares of stock owned by Walter as his community

property, made a distribution to petitioner, having a then-discounted value of $263,421.17.

The accumulated earnings and profits of COCO, as of June 30, 1966, was $187,424.97.

Pursuant to the 1962 stock purchase agreement, HOVE redeemed all the shares of its stock previously owned by Walter and Lillian. Thereafter, until December 31, 1968, Jack B. Crawford and Don D. Crawford owned all the issued and outstanding shares of stock of HOVE. On December 31, 1968, Jack B. Crawford and Don D. Crawford transferred all of the shares of stock in HOVE to Commonwealth United Corp. in exchange for stock in Commonwealth United Corp.

During Lillian's calendar year 1965 and during HOVE's fiscal year ended October 31, 1966, HOVE, in consideration of the redemption of its shares of stock in which Lillian had a community property interest, made a distribution to Lillian, having a then-discounted value of $404,878.10.

During the fiscal year ended July 31, 1966, of petitioner and during HOVE's fiscal year ended October 31, 1966, HOVE, in consideration of the redemption of its shares of stock owned by Walter as community property, made a distribution to petitioner, having a then-discounted value of $404,878.10.

The accumulated earnings and profits of HOVE, as of October 31, 1966, was $472,666.35.

On September 16, 1968, Lillian filed with, and there was received by, the district director of internal revenue at Los Angeles, Calif., an amended income tax return for the year 1965. Attached to that return were section 302(c)(2) agreements regarding the redemption by HOVE and COCO.

On November 20, 1968, petitioner filed with, and there was received by, the district director of internal revenue at Los Angeles, Calif., an amended income tax return for its fiscal year ended July 31, 1966. Attached to that return were section 302(c)(2) agreements, executed by Jack B. Crawford as executor of his father's estate, regarding the redemptions by HOVE and COCO.

OPINION

At the date of his death on August 16, 1965, Walter and Lillian owned as community property one-third of the stock of HOVE and COCO, and their two sons, Jack and Don, each owned one of the remaining thirds of the stock of each corporation. Pursuant to agreements entered into in 1962 the corporations redeemed the stock held by Walter's estate, petitioner herein, and the stock held by Lillian. After

the redemptions petitioner and Lillian ceased to have any interest in the corporations other than as a creditor. In the latter part of 1968 Lillian filed an amended income tax return for 1965; and petitioner filed an amended income tax return for the taxable year ended July 31, 1966. Attached to these amended returns were agreements under section 302(c)(2) regarding the redemptions by HOVE and COCO.

Petitioner claims that the redemptions of its stock in HOVE and COCO should be treated as a sale or exchange under section 302(a) because it completely terminated its interest in these corporations under the requirements of section 302(b)(3). Respondent contends that petitioner, as an estate, was not eligible to file agreements under section 302(c)(2) to waive the family attribution rules and that by virtue of such rules petitioner owned 100 percent of the stock of the corporations, constructively and actually, both before and after the redemptions.[3] Accordingly, respondent claims that section 302(b)(3) would not save petitioner's receipt of distributions in liquidation from dividend treatment. We agree with petitioner.

Section 302(c)(1) requires that the attribution rules of section 318(a) be applied in determining changes of ownership under section 302(b). As respondent applies these rules, Lillian constructively owned all of the stock of her sons by operation of section 318(a)(1)(A) and petitioner owned constructively all of the stock owned actually and constructively by Lillian by operation of section 318(a)(3)(A) both before and after the redemptions. Respondent's application of the attribution rules makes petitioner the owner of all of the stock of the corporations at all times and gives no effect to petitioner's attempted waiver of the family attribution rules under section 302(c)(2).

Section 302(c)(2) provides the following, in part:

SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) FOR DETERMINING TERMINATION OF INTEREST.—

(A) In the case of a distribution described in subsection (b)(3), section 318(a)(1) shall not apply if—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(iii) the distributee, at such time and in such manner as the Secretary or his delegate by regulations prescribes, files an agreement to notify the Secretary or his delegate of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph.

---

[3] Respondent did not contend in his opening statement or on brief that the sec. 302(c)(2) agreement filed by petitioner should be given no effect because the filing was not timely. Although the issue may have been raised by respondent's answer, which was a general denial, we assume from respondent's opening statement and briefs that only the eligibility of petitioner to file the agreement was in issue.

Petitioner was the "distributee" of the two corporations in the sense that the word is used in general conversation and throughout the Code. By the unambiguous language of the section petitioner appears to be able to waive the family attribution rules of section 318(a)(1); however, respondent contends that "distributee" refers to the family members described in section 318(a)(1) and that the waiver is applicable only to the redemption of the stock of a family member and not to the redemption of the stock held by an entity like an estate. Happily, respondent has not tried to persuade us that the exclusive reference of "distributee" to family members is contained in either the language or the syntax of the statute because we are fairly confident that no such reference could be found therein. Respondent does contend that his position is "clear" from the legislative history of section 302(c)(2).

We note that respondent adopted a position similar to that urged here in Rev. Rule 59–233, 1959–2 C.B. 106, which held that a trust could not avail itself of the waiver of family attribution rules. We note also that there has been no reported case dealing with respondent's view of section 302(c)(2) and its legislative history.

Respondent bids us look at the report of the Senate Finance Committee to see the clarity of his position. The Senate report dealing with section 302(c)(2) states in part:

Paragraph (2) of subsection (c) provides special rules for application of section 318(a)(1) (relating to constructive ownership of stock between members of a family) in the case of a distribution in redemption under paragraph (3) of subsection (b) (relating to termination of a shareholder's interest). Under subpararaph (A) of paragraph (2), it is provided that section 318(a)(1) shall not apply, *i.e., stock owned by members of the family of the distributee would not be attributed to him immediately after the distribution in redemption, if the distributee himself has no interest in the corporation,* including but not limited to an interest as officer, director or employee other than an interest as a creditor, and such distributee does not acquire such interest (other than stock acquired by bequest or inheritance) within 10 years from the date of distribution in redemption.

Moreover, in order to qualify for *nonattribution between members of a family,* subparagraph (A)(iii) requires that the distributee, under regulations prescribed by the Secretary or his delegate, file an agreement to notify the Secretary or his delegate of any acquisition of any interest (other than by bequest or inheritance) within the 10-year period and to retain such records as the Secretary or his delegate may prescribe as necessary for the application of paragraph (2). Thus, your committee anticipates that the Secretary or his delegate may require that the distributee retain *personal* income tax returns and other records indicating fully the amount of tax which would have been payable had the redemption not been treated as a distribution in full payment for his stock.

[Emphasis supplied by respondent. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., pp. 235–236 (1954).]

The report does discuss the application of the waiver provision to the redemption of a family member's stock in a corporation, and it does use such words as "he," "his family," and "personal" throughout its discussion; but we do not think that the short analysis of the provision in the report attempts to be an exhaustive exegesis of the statute. If any one of the words from the report which are emphasized by respondent had found its way into section 302(c)(2), we might be inclined to limit the scope of the provision to the situations described in the report; but in fact Congress appears to have scrupulously avoided such words in the drafting of the statute. We cannot regard Congress' choice of the word "distributee" as an inadvertence or oversight when the word is used eight times in section 302(c)(2).

We have indicated that we will not slavishly apply the literal language of a statute where such application will lead to absurd consequences. *International Trading Co.*, 57 T.C. 455, 461 (1971). In the case of section 302(c)(2) respondent claims that permitting an estate to avail itself of this waiver-of-attribution' provision will lead to abuses because the waiver agreements filed by an estate will not prevent the beneficiaries from acquiring an interest in the distributing corporation within 10 years after the redemption. While such a potential for abuse does exist, the particular remedy proposed by respondent will itself lead to a nonsensical result in this and other cases.

As sole beneficiary of her husband's estate Lillian owned actually and beneficially all of the stock redeemed by the two corporations; yet respondent contends that the half of the distributions in redemption received by the estate should be treated as dividends and taxed as ordinary income while the other half received directly by her should be treated as the proceeds of a sale or exchange and escape taxation (because her basis under section 1014 would presumably equal' the amount paid to redeem the shares). In substance Lillian redeemed her entire interest in the two corporations and has agreed to refrain from acquiring an interest in the corporations for 10 years—she has done all that Congress has requested in order to obtain favorable treatment under section 302. We cannot agree that respondent's contrived interpretation of section 302(c)(2) would bring about results more in consonance with the intent of Congress or that it would produce results which would be generally preferable to those which would obtain if the literal language of the statute were followed.

Although respondent urges that we eschew literality in determining which "distributees" may avail themselves of section 302(c)(2), he contends on brief that the agreement filed by Lillian under this provision cannot be effective with respect to the redemption of the stock held by petitioner because she was not literally the distributee in that redemption. Respondent thus presents a paradox: an estate should

not be eligible to file a section 302 (c) (2) agreement because such agreement does not bind the beneficiaries, but an agreement binding the beneficiaries cannot be effective because it was not executed by the estate. Our decision here rests solely upon the effectiveness of the waiver agreement filed by petitioner, and we do not consider whether a waiver agreement filed by Lillian should be given effect for purposes of the redemption of petitioner's stock. Nevertheless, we are concerned that the positions taken by respondent will prevent a family member who receives his interest in a corporation through inheritance from terminating this interest in a redemption qualifying under section 302(b)(3) unless the stock is first distributed to him by the estate. Even if it were possible for estates to distribute the stock in all instances prior to the redemption, respondent's positions merely put a premium on tax planning and set a trap for the unwary. Although other such traps exist in the Code and we must enforce them, we are unwilling to create such a trap by contorting the unambiguous language of section 302 (c) (2).

In view of the foregoing we hold that the distributions received by petitioner in its taxable year ended July 31, 1966, in complete redemption of its stock of HOVE and COCO qualify under section 302(b)(3) as distributions received in payment in exchange for such stock. Because we have held that the distributions qualify under section 302(b)(3), we need not consider petitioner's alternative argument that they would qualify under section 302(b)(1).

*Decisions will be entered for the petitioners.*