RODGERS P. JOHNSON TRUST, HARRISON JOHNSON, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1335–76.     Filed February 28, 1979.

*Ellis D. Bever* and *Jack D. Flesher*, for the petitioner.
*John W. Paul*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies of $2,874.19 and $29,085.68 in petitioner's Federal income taxes for the calendar years 1972 and 1973, respectively. All of the issues raised by the pleadings for the year 1972 and some of the issues raised by the pleadings for the year 1973 have been disposed of by the parties, leaving for our decision only whether the redemption in 1973 by Crescent Oil Co., Inc. (Crescent Oil), of all its stock owned by petitioner should be treated under section 302, I.R.C. 1954,[1] as a payment in exchange for the stock.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner Rodgers P. Johnson Trust is a testamentary trust. Its income tax returns were filed by Harrison F. Johnson who resided in Independence, Kans., at the time of the filing of the petition herein. Petitioner filed a United States Fiduciary Income Tax Return (Form 1041) for the year 1973 with the Internal Revenue Service Center in Austin, Tex., using the cash receipts and disbursements method of accounting.

Petitioner was created by the will of Rodgers P. Johnson (hereinafter grantor). The grantor died on March 14, 1968, survived by his wife, Martha M. Johnson, and their adopted son, Philip R. Johnson. After providing for payment of his debts, the expenses of his last illness, and funeral and administration expenses, the grantor, in his will, bequeathed to Mrs. Johnson an amount of money or property equal to one-half of all the property he owned at his death. Mrs. Johnson was empowered to select the assets to satisfy this bequest, so long as the assets selected were of a kind that would qualify for the marital deduction for Federal estate tax purposes. The grantor directed that all taxes be paid out of the residue of his estate. Finally, he bequeathed the rest and residue of his estate to Harrison Johnson and Mrs. Johnson, in trust, to be disposed of as follows:

(a) If, in the sole discretion of Harrison F. Johnson, my wife, Martha M. Johnson, needs a portion of the income or principal for her comfortable living, support or medical care, my trustees shall distribute to her or for her benefit such amounts as said Harrison F. Johnson shall deem necessary for such purpose. Any income from the trust estate which is not distributed to my said wife during the. calendar year may, in the discretion of the trustees, be accumulated for, paid to, or used for the benefit of my son, Philip R. Johnson.

(b) This trust shall terminate upon the death of my wife, Martha M. Johnson, at which time my trustee shall distribute the trust principal to my son, Philip R. Johnson, together with any income that may have been accumulated for his benefit under (a) hereof, provided, however, that if Philip is under thirty-five (35) years of age at the time of such termination this trust shall continue until he reaches age thirty-five (35), at which time such distribution shall be made to him.

(c) In the event of Philip's death prior to the termination of the trust, survived by my wife, Martha M. Johnson, one-half of the trust property shall be delivered to her. The remaining trust property shall be held for the benefit of Philip's children. Any income from the trust estate which is not distributed to my wife during the calendar year after the death of Philip may be

accumulated for, paid to, or used for the benefit of Philip's children or their issue in such manner as my trustees solely in their discretion may determine.

(d) Upon termination of the trust at the death of my wife, Martha, or at the death of Philip if he should survive my wife but die before age thirty-five (35), the trust property and any accumulated income shall pass to Philip's children then surviving, share and share alike, with the issue of any deceased children taking the share their parent would have received, if such parent were then living. If there are no children or issue thereof then surviving, then the property shall be paid and delivered to Philip's wife who is legally married to Philip at the time of his death.

At the time of Rodgers P. Johnson's death, Mrs. Johnson was 53 years old and Philip was 24. At the creation of the trust, Philip Johnson had a 96.14-percent actuarial interest in the trust, and Mrs. Johnson had a 1.898-percent interest (without regard to the possibility of distribution for the support or care of Mrs. Johnson).

In 1972, administration of Rodgers P. Johnson's estate was completed, and the estate was closed. Upon the closing of the estate, 112 shares of stock of Crescent Oil were distributed from the estate to petitioner. On March 29, 1973, Crescent Oil redeemed 12 of the shares owned by petitioner in exchange for 300 shares of stock of Union Gas Co. (Union). On May 21, 1973, Crescent Oil redeemed the remaining 100 shares owned by petitioner in exchange for 2,650 shares of Union. Petitioner owned no other shares of Crescent Oil stock at the time of the aforementioned redemptions. It has acquired no other Crescent Oil shares since the redemptions. At the time of the redemptions, Philip Johnson owned no shares of Crescent Oil stock. He has not acquired any Crescent Oil stock since the redemptions. Philip Johnson is the beneficiary of one other trust, which was created by the will of his grandmother, Hazel Johnson. The Hazel Johnson Trust neither owned any Crescent Oil stock at the time of the redemptions, nor has since acquired any Crescent Oil stock. Neither petitioner nor Philip Johnson has had any managerial interest in Crescent Oil since the redemptions.

Prior to the aforementioned redemptions, Mrs. Johnson owned 920 of 2,368 Crescent Oil shares outstanding. Subsequent to the redemptions, she held 920 of 2,256 shares outstanding. At the time of Rodgers P. Johnson's death, Mrs. Johnson owned 324 shares of Crescent Oil with a value of $530 per share; 1,038 shares of Union with a value of $12 per share; 42 shares of Yellow Cab Co. with a value of $20 per share; and a one-half

interest in 556 additional shares of Crescent Oil held jointly with Rodgers P. Johnson. Upon her husband's death, Mrs. Johnson succeeded to his interest in the jointly held 556 Crescent Oil shares and to his interest in jointly held real and personal property with a value of $30,000. Further, Mrs. Johnson received $50,000 in life insurance proceeds. From the probate of the estate, Mrs. Johnson received property valued at $198,278.04.

On January 23, 1975, Harrison Johnson and Mrs. Johnson, as cotrustees of the Rodgers P. Johnson Trust, filed with the office of respondent in Topeka, Kans., the following letter:

Dear Sir:

This agreement is filed by the undersigned taxpayer pursuant to the provisions of Section 302(c)(2)(A)(iii) of the Internal Revenue Code and 1.302–4(a) of the income tax regulations, with respect to a distribution to the taxpayer from Crescent Oil Co. of Independence, Kansas, on March 26, 1973 and April 27, 1973, in redemption of all of its stock in the corporation. The distribution to the Trust consisted of 300 shares of Union Gas System, Inc., stock having a value of $6,000 and 2,650 shares of Union Gas System, Inc., stock having a value of $53,000.

The undersigned is a distributee required by the aforesaid provision to file this agreement.

The undersigned has not acquired any interest (as described in Section 302(c)(2)(A)(i)) in the Crescent Oil Co. since the above-mentioned distribution.

The undersigned agrees to notify the District Director of Internal Revenue, for the district in which its income tax return is filed, in the event it acquires any interest in the Crescent Oil Co. of the type described in Section 302(c)(2)(A)(i) and 1.302–4 of the income tax regulations if such acquisition occurs within ten (10) years from the date of the distribution. The undersigned agrees to notify the District Director within thirty (30) days after any such acquisition.

On the same date, Philip Johnson, as beneficiary of petitioner, filed with respondent's office in Topeka a similar letter stating that he neither owned any interest in Crescent Oil at the time of the redemptions nor had acquired any interest since that time. He also agreed to notify the District Director within 30 days if he acquired any interest in Crescent Oil during the 10-year period following the redemptions.

The trustees of petitioner arranged for the redemption of the Crescent Oil stock because that stock did not pay dividends and they wished to replace it with an asset which would produce income for the trust. All the outstanding stock of Crescent Oil, other than that owned by Mrs. Johnson and (prior to the

redemption) by the trust, was owned by Harrison Johnson or members of his immediate family.

At the beginning of the year 1973, Crescent Oil had accumulated earnings and profits of $858,986.14 and at the close of that year had current and accumulated earnings and profits of $972,531.15.

In his notice of deficiency, respondent determined that the 1973 redemption of 112 shares of Crescent Oil stock in exchange for 2,950 shares of Union Gas Co. stock constituted a taxable dividend under sections 301 and 316. Accordingly, he increased petitioner's taxable income for the taxable year 1973 in the amount of $59,360.

## OPINION

Section 302(a) accords exchange treatment to a redemption by a corporation of its stock if paragraph (1), (2), (3), or (4) of section 302(b) applies.[2] Section 302(b)(1) makes section 302(a)

---

[2] SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(b) REDEMPTIONS TREATED AS EXCHANGES.—

(1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.— Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

(2) SUBSTANTIALLY DISPROPORTIONATE REDEMPTION OF STOCK.—

(A) IN GENERAL.—Subsection (a) shall apply if the distribution is substantially disproportionate with respect to the shareholder.

(B) LIMITATION.—This paragraph shall not apply unless immediately after the redemption the shareholder owns less than 50 percent of the total combined voting power of all classes of stock entitled to vote.

(C) DEFINITIONS.—For purposes of this paragraph, the distribution is substantially disproportionate if—

(i) the ratio which the voting stock of the corporation owned by the shareholder immediately after the redemption bears to all of the voting stock of the corporation at such time,

is less than 80 percent of—

(ii) the ratio which the voting stock of the corporation owned by the shareholder immediately before the redemption bears to all of the voting stock of the corporation at such time.

For purposes of this paragraph, no distribution shall be treated as substantially disproportionate unless the shareholder's ownership of the common stock of the corporation (whether voting or nonvoting) after and before redemption also meets the 80 percent requirement of the preceding sentence. For purposes of the preceding sentence, if there is more than one class of common stock, the determinations shall be made by reference to fair market value.

(D) SERIES OF REDEMPTIONS.—This paragraph shall not apply to any redemption made pursuant to a plan the purpose or effect of which is a series of redemptions resulting in a distribution which (in the aggregate) is not substantially disproportionate with respect to the shareholder.

(3) TERMINATION OF SHAREHOLDER'S INTEREST.—Subsection (a) shall apply if the redemption is in complete redemption of all the stock of the corporation owned by the shareholder.

(4) STOCK ISSUED BY RAILROAD CORPORATIONS IN CERTAIN REORGANIZATIONS.—Subsection (a) shall apply if the redemption is of stock issued by a railroad corporation (as defined in section 77(m) of the Bankruptcy Act, as amended) pursuant to a plan of reorganization under section 77 of the Bankruptcy Act.

(5) APPLICATION OF PARAGRAPHS.—In determining whether a redemption meets the requirements

applicable if the redemption is not essentially equivalent to a dividend. Section 302(b)(2) makes this section applicable if the redemption is substantially disproportionate as defined therein. Section 302(b)(3) treats as an exchange the complete redemption by a corporation of all of that corporation's stock owned by a taxpayer.

Petitioner contends that the redemption of its Crescent Oil stock should be accorded exchange treatment under the provisions of section 302(b)(1), (2), and (3).

Section 302(c)(1) makes the provisions of section 318(a), governing constructive ownership of stock, applicable in determining the ownership of stock for purposes of section 302.[3] Under section 318(a)(1), as made applicable to redemptions by section 302(c), generally the 920 Crescent Oil shares held by Mrs. Johnson would be attributed to Philip Johnson, and under section 318(a)(3)(B)(i), reattributed to petitioner. In some cases, section 318(a)(1) has been held to be inapplicable where family hostility has been shown to exist. Petitioner contends that there existed hostility between Mrs. Johnson and her son so that the "family hostility" exception to the attribution rules should render them inapplicable. See *Estate of Squier v. Commissioner*, 35 T.C. 950 (1961).

In our view, no element of family hostility is present in this case. Mrs. Johnson testified that she would prefer that Philip not have any interest in Crescent Oil, but this, alone, does not constitute "hostility." Moreover, Philip is Mrs. Johnson's only son, the natural object of her bounty and affection. In contrast to hostility, she displayed in her testimony the care likely to be felt by any concerned parent for a child who has experienced difficulties. Mrs. Johnson testified that she had given funds to Philip when he was in need of such funds. Her testimony showed her willingness to help Philip in the past in times of difficulty and indicated that this willingness presently existed. On these

of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. If a redemption meets the requirements of paragraph (3) and also the requirements of paragraph (1), (2), or (4), then so much of subsection (c)(2) as would (but for this sentence) apply in respect of the acquisition of an interest in the corporation within the 10-year period beginning on the date of the distribution shall not apply.

[3] Sec. 302(b)(5) (n. 2 *supra*) makes the waiver requirements of sec. 302(c)(2) inapplicable if the redemption meets the requirements of sec. 302(b)(1) or (2) as well as sec. 302(b)(3). Therefore, we consider it preferable to decide petitioner's contentions under sec. 302(b)(1) and (2) before reaching the primary argument of the parties in the case which relates to the application of the waiver agreement provisions of sec. 302(c)(2) to trusts.

facts, we find there was no hostility warranting the inapplicability of the attribution rules.

Section 302(b)(1) provides that a distribution in redemption shall be accorded exchange treatment if it is not essentially equivalent to a dividend. Construing this provision in *United States v. Davis*, 397 U.S. 301 (1970), the Supreme Court held that to qualify for exchange treatment under section 302(b)(1) "a redemption must result in a meaningful reduction of the shareholder's proportionate interest in the corporation." *United States v. Davis, supra* at 313. Prior to the 1973 redemption, of the 2,368 shares of Crescent Oil outstanding, petitioner was the owner of 112 shares and is to be treated as the constructive owner of Mrs. Johnson's shares, bringing its total holdings to 1,032 shares, or 43.6 percent. Immediately after the redemption, of the 2,256 Crescent shares outstanding, petitioner constructively owned Mrs. Johnson's 920 shares, or 40.8 percent of the then-outstanding shares. Accordingly, petitioner's proportionate ownership interest was decreased by 2.8 percent. Petitioner argues that this reduction is "meaningful" within the purview of *United States v. Davis, supra*, citing *Wright v. United States*, 482 F.2d 600 (8th Cir. 1973); Rev. Rul. 75–512, 1975–2 C.B. 112, and Rev. Rul. 76–364, 1976–2 C.B. 91. In *Wright*, a reduction of a taxpayer's ownership interest in a corporation from 85 percent to 61.7 percent was held to be meaningful within the meaning of *United States v. Davis, supra*. Prior to the redemption in that case, however, under State law the taxpayer's holdings would have enabled the taxpayer, acting alone, to amend the articles of incorporation, or to force a merger, consolidation, or liquidation. Subsequent to the liquidation, none of these courses of action could have been followed as a result of the taxpayer's sole vote. The reduction in the shareholder's interest, coupled with the loss in voting power, led to a finding of lack of dividend equivalence. In Rev. Rul. 75–512 and Rev. Rul. 76–364, the reduction in the taxpayer's interest in the corporation after the redemption was substantially greater than in the instant case. Also, in Rev. Rul. 76–364, the reduction in the taxpayer's interest was deemed meaningful because it caused the taxpayer to go from a position of holding a block of stock that afforded the taxpayer control if the taxpayer acted in concert with only one other person to a position where this was not possible.

In the case now before us, there was no significant change in

the control of Crescent Oil after the redemptions. Petitioner's constructive ownership in Crescent Oil was only reduced from 43.6 to 40.8 percent. Accordingly, we find that the result of this small reduction in ownership interest was not meaningful and that petitioner has not met the requirements of section 302(b)(1).

Under section 302(b)(2), a substantially disproportionate distribution will be eligible for exchange treatment under subsection (a). Section 302(b)(2)(C) (see n. 2 *supra*) sets forth the definition of a substantially disproportionate distribution. Under this definition, a distribution is substantially disproportionate if the ratio of the voting stock of the corporation owned by the shareholder immediately after the redemption to all voting stock of the corporation is less than 80 percent of the comparable ratio immediately prior to the redemption. Petitioner fails to meet the safe harbor of this subsection. Immediately after the redemption, petitioner constructively owned 40.8 percent of the outstanding Crescent Oil stock. Immediately before the redemption, petitioner owned, actually and constructively, 43.6 percent of the outstanding Crescent Oil stock. The ratio of voting stock owned after the redemption is 93.6 percent of the ratio owned prior thereto. Accordingly, petitioner has not met the mechanical tests of this section.

The final position of petitioner is that the provisions of section 302(b)(3) apply since the waiver agreement that it filed in accordance with the provisions of section 302(c)(2)(A)(ii) is effective.

Section 302(c)(1) provides that the provisions of section 318(a) concerning constructive ownership of stock shall apply in determining the ownership of stock for purposes of section 302. Under section 318(a)(1)(A)(ii), an individual is considered as owning the stock owned by his parents. By virtue of this provision, Philip Johnson is considered the owner of the Crescent Oil stock held by Mrs. Johnson. Under section 318(a)(3)(B)(i), stock indirectly owned by a trust beneficiary, whose interest is not a remote contingent interest, is considered as owned by the trust. By virtue of this provision, petitioner is considered as the owner of the Crescent Oil stock owned by Mrs. Johnson and attributed to Philip Johnson.[4]

---

[4]The parties agree that Mrs. Johnson's Crescent Oil stock is attributed to Philip Johnson and reattributed to petitioner. Respondent on brief conceded that Mrs. Johnson's beneficial interest in petitioner is a "remote contingent interest" within the meaning of sec. 318(a)(3)(B)(i), so that her

Section 302(c)(2) provides that the constructive ownership rules of section 318(a)(1)(the family attribution provision) shall not apply in the case of a distribution terminating a shareholder's interest if the distributee (1) has no interest in the corporation other than as a creditor, (2) does not acquire any such interest within 10 years from the date of such distribution, and (3) files a proper agreement to notify the Commissioner of any such acquisition within 10 years and to retain the necessary records so that the appropriate deficiency may be assessed and collected if any such acquisition is made.[5] Respondent does not contend that either petitioner or its beneficiary, Philip, retained a direct interest in Crescent Oil and does not contend that the

---

Crescent Oil stock is not attributable directly to petitioner. For this reason, we have not included in our findings all the facts established by the evidence with respect to the remoteness of the possibility of distributions from the trust for the support and care of Mrs. Johnson.

[5] SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—

* * * * * * *

(2) FOR DETERMINING TERMINATION OF INTEREST.—

(A) In the case of a distribution described in subsection (b)(3), section 318(a)(1) shall not apply if—

(i) immediately after the distribution the distributee has no interest in the corporation (including an interest as officer, director, or employee), other than an interest as a creditor,

(ii) the distributee does not acquire any such interest (other than stock acquired by bequest or inheritance) within 10 years from the date of such distribution, and

(iii) the distributee, at such time and in such manner as the Secretary or his delegate by regulations prescribes, files an agreement to notify the Secretary or his delegate of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph.

If the distributee acquires such an interest in the corporation (other than by bequest or inheritance) within 10 years from the date of the distribution, then the periods of limitation provided in sections 6501 and 6502 on the making of an assessment and the collection by levy or a proceeding in court shall, with respect to any deficiency (including interest and additions to the tax) resulting from such acquisition, include one year immediately following the date on which the distributee (in accordance with regulations prescribed by the Secretary or his delegate) notifies the Secretary or his delegate of such acquisition; and such assessment and collection may be made notwithstanding any provision of law or rule of law which otherwise would prevent such assessment and collection.

(B) Subparagraph (A) of this paragraph shall not apply if—

(i) any portion of the stock redeemed was acquired, directly or indirectly, within the 10-year period ending on the date of the distribution by the distributee from a person the ownership of whose stock would (at the time of distribution) be attributable to the distributee under section 318(a), or

(ii) any person owns (at the time of the distribution) stock the ownership of which is attributable to the distributee under section 318(a) and such person acquired any stock in the corporation, directly or indirectly, from the distributee within the 10-year period ending on the date of the distribution, unless such stock so acquired from the distributee is redeemed in the same transaction.

The preceding sentence shall not apply if the acquisition (or, in the case of clause (ii), the disposition) by the distributee did not have as one of its principal purposes the avoidance of Federal income tax.

agreement filed by petitioner does not meet the formal requirements of the statute and regulations.[6] Respondent's sole contention with respect to petitioner's noncompliance with the provisions of section 302(c)(2) is that only family members as defined in section 318(a)(1) are within the definition of the term "distributee" as used in section 302(c)(2). Since petitioner is a trust for a family member and not a natural person, respondent contends that an agreement filed by petitioner meeting all the stated requirements of section 302(c)(2) is not effective.

In *Crawford v. Commissioner*, 59 T.C. 830 (1973), this Court considered the question whether an estate was statutorily capable of filing a section 302(c)(2) waiver agreement. In that case, Mrs. Lillian Crawford and her husband, Mr. Walter Crawford, owned as community property one-third of the stock of two corporations. Their sons owned the remainder of the stock in each corporation. In 1962, Mr. and Mrs. Crawford and their two sons entered into stock purchase agreements providing for the disposition of stock in the two corporations upon the death of any of the shareholders. After Walter Crawford's death, pursuant to the stock purchase agreements, the two corporations redeemed the stock held by Mrs. Crawford and Walter Crawford's estate. Both the estate and Mrs. Crawford filed section 302(c)(2) waiver agreements. Respondent argued that the waiver agreement filed by the estate was not effective. Based on language contained in the committee reports[7] referring to family members but not to entities in the context of the waiver of attribution, respondent contended that Congress intended the term "distributee" in section 302(c)(2)(A)(iii) to refer only to family members. We rejected that argument, pointing out that the statute used the word "distributee" which did include an estate or trust distributee. Since, by its terms, the statute clearly included an estate distributee, we refused to regard as an inadvertence Congress' use eight times within section 302(c)(2) of that word. In the *Crawford* case, we concluded that repeated use of the word "distributee," equally applicable both to persons and to entities, indicated a scrupulous avoidance of terms such as those in the Senate report which respondent contended limited the capability to waive attribution to family members. Our

---

[6]At the trial, respondent questioned whether the agreement filed by petitioner was timely filed, but on brief conceded that it was.

[7]See S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 235–236 (1954).

holding in this respect in the *Crawford* case was followed by the District Court for the District of Louisiana in *Rickey v. United States*, 427 F.Supp. 484 (W.D. La. 1976), on appeal (5th Cir., Feb. 25, 1977). Neither party has directed our attention to, nor have we found, any other cases dealing precisely with the meaning of the term "distributee" as used in section 302(c)(2).

*Robin Haft Trust v. Commissioner*, 62 T.C. 145 (1974), a Supplemental Opinion denying the taxpayers' motion to vacate 61 T.C. 398 (1973), vacated for consideration of other matters, 510 F.2d 43 (1st Cir. 1975), involved a contention by a trust that it had complied with the provisions of section 302(c)(2)(A)(iii). We held that no agreement as required by section 302(c)(2)(A)(iii) had been filed and an offer to file such an agreement did not meet the requirement of the statute and regulations for a timely filed waiver agreement. In that case, we stated that we were not passing on the question of whether a trust could file such an agreement. In so holding, we noted that *Crawford v. Commissioner, supra,* dealt with whether an estate was a distributee within the meaning of section 302(c)(2)(A)(iii) and stated that "trusts and estates are different entities and considerations applicable to one may not apply to the other." (62 T.C. at 148.)

Respondent did not acquiesce in our decision in *Crawford,* 1974–2 C.B. 5, and has outstanding Rev. Rul. 59–233, 1959–2 C.B. 106, on which he had relied in the *Crawford* case, denying to a trust the right, under section 302(c)(2), to waive attribution to the trust of the ownership of stock held by relatives of the trust beneficiary. In the *Crawford* case, we noted that respondent relied on Rev. Rul. 59–233, *supra,* but did not distinguish this revenue ruling on the basis that it applied to a trust and not to an estate. Rather, we rejected respondent's basic argument that the term "distributee" as used in section 302(c)(2)(A)(iii) did not include entities such as trusts and estates as well as family members. In the instant case, respondent repeats some of the arguments he made in the *Crawford* case and, in addition, attempts to distinguish that case from the instant case. Respondent argues that whereas there may well not be a unity of economic interest among family members whose stocks are attributed to each other, because Philip Johnson is the beneficial owner of the assets held by petitioner, there is an identity of economic interest with respect to Philip Johnson and petitioner.

From this argument, respondent concludes that were Philip Johnson to acquire Crescent Oil stock within the 10-year period following redemption of petitioner's holdings, in economic reality, the complete termination rule would have been circumvented and the policy underlying application of the attribution rules—the insurance of a "bona fide severance of a particular shareholder's interest in an enterprise"[8] —would be frustrated.

In his argument, respondent does not discuss the question of whether an acquisition of Crescent Oil stock by Philip within the 10-year period following the redemption of petitioner's Crescent Oil stock should be considered by reason of the attribution rules of section 318(a)(3)(B)(i) to be an acquisition of an interest in Crescent Oil by petitioner within the meaning of section 302(c)(2)(A)(ii). Section 302(c)(1)[9] provides that, except where the family attribution rules of section 318(a)(1) have been properly waived, section 318(a) shall apply in determining ownership of stock for the purposes of section 302. Therefore, even though petitioner waives the family attribution rules of section 318(a)(1) so that stock owned by Philip's mother is not considered attributable to Philip, it has not waived, and cannot, under section 302(c), waive the provisions of section 318(a)(3)(B)(i) attributing to it stock owned by its beneficiary, Philip.

Even though respondent, in his brief, appears to assume to the contrary, it might well be argued that if Philip acquired Crescent Oil stock while he was the beneficiary of petitioner under section 318(a)(3)(B)(i) attributing ownership of that stock to petitioner, petitioner would have acquired an interest in Crescent Oil within the meaning of section 302(c)(2)(A)(ii). However, this issue is not before us and we do not decide it. In the unlikely event that petitioner distributes its assets and ceases to exist before the 10-year period expires, a question would arise whether the waiver filed by Philip would bind him as a transferee of petitioner's assets. In any event, here, as we pointed out in the *Crawford* case in connection with · the

---

[8] S. Rept. 1622, n. 7 *supra.*
[9] SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(c) Constructive Ownership of Stock—

(1) In general.—Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section.

beneficiary of the estate who had also executed a waiver agreement, this question is not before us and we do not decide it.

If we assume, as apparently respondent does, that there is no provision of the Code which would charge petitioner with ordinary income from the redemption of its Crescent Oil stock in the event that Philip Johnson should acquire Crescent Oil stock before expiration of the 10-year period, we would not, for that reason, conclude that petitioner is not a "distributee" within the meaning of section 302(c)(2)(A). Respondent argues that had Congress intended the waiver provisions to apply to trusts and beneficiaries, it would have provided either for a mechanism whereby petitioner could be charged with ordinary income treatment upon Philip Johnson's acquisition of Crescent Oil stock or for a legally enforceable waiver agreement to be filed by a trust beneficiary. As heretofore pointed out, we would not without further consideration conclude that Congress has not made such a provision. In any event, we are not persuaded that we should ignore the plain language of the statute, which states that a waiver agreement may be filed by a "distributee" and places no limitations on the types of distributees eligible to file the agreement.

Respondent asserts that the facts in this case differ from those in *Crawford* in three significant aspects. First, he contends that, in contrast to an estate, which is intended by all parties to be administered and closed as expeditiously as possible, a trust has an indefinite life. Respondent argues that our concern in *Crawford* was that an estate's inability to waive attribution would put a premium on tax planning and set a trap for the unwary by preventing "a family member who receives his interest in a corporation through inheritance from terminating this interest in a redemption qualifying under section 302(b)(3) unless the stock is first distributed to him by the estate,"[10] in which case no adverse tax result would have followed. Here, by contrast, respondent's argument continues, the parties are attempting to achieve a result which could not have been achieved merely by awaiting the closing of an estate as in *Crawford*, because petitioner has an indefinite life and the trust

---

[10] *Crawford v. Commissioner*, 59 T.C. 830, 837 (1973).

assets are to be distributed to Philip Johnson only in the event he survives his mother and reaches age 35.

Respondent is correct in his assertion that we were concerned in *Crawford v. Commissioner, supra,* that the inability of an estate to waive attribution could result in adverse tax consequences that could be avoided if the parties arranged for redemption of the stock after distribution to the beneficiaries of the estate's assets. However, that was not the underlying basis of our decision in the *Crawford* case. Rather, our decision rested on the proper interpretation of the word "distributee" in section 302(c)(2).

Moreover, the adverse consequences to a trust that could flow from a restrictive interpretation of the term "distributee" might be substantial where, as here, a trust holds non-income-producing, closely held stock that the trustee wishes to dispose of and replace with income-producing assets. If such stock is publicly traded, the trustee could sell it and invest the proceeds in income-producing assets. If, however, the stock is closely held, like Crescent Oil stock, unless the attribution rules could be waived so that the stock could be redeemed and the proceeds used to acquire income-producing assets, the trustee could be "locked-in" with non-income-producing assets for a very long period of time.

Respondent also contends that in *Crawford* there was not the potential for abuse present in this case. Because both Mrs. Crawford and the estate were distributees and had filed waivers, if the beneficiary had reacquired stock, she would have been forced to recognize ordinary income treatment under the terms of her own waiver. Here, by contrast, Philip Johnson is not a distributee.[11] However, in the *Crawford* case, under respondent's interpretation of the statutes, Mrs. Crawford would have been taxable had she reacquired stock of the redeeming corporation only with respect to the shares of stock held by her personally which were redeemed, not with respect to those redeemed from the estate. In the *Crawford* case, we specifically left open the question whether, if Mrs. Lillian Crawford were to reacquire

---

[11]In this argument, respondent implies without so stating that his position with respect to a waiver agreement under sec. 302(c)(2) by a trust might be accorded different treatment if the beneficiary had also owned a few shares of stock of the redeeming corporation and had personally filed a waiver agreement upon the redemption of these shares. If respondent intends such an inference, it is in direct conflict with his primary position in both *Crawford v. Commissioner,* 59 T.C. 830 (1973), and the instant case.

stock in the redeeming corporation within the 10-year period following redemption, her individual waiver agreement would have been effective to charge the estate with ordinary income treatment with respect to the shares redeemed from it. Similarly, in the case now before us, we leave this question open, resting our decision on the effectiveness of the agreement filed by petitioner, not the agreement filed by Philip Johnson. A waiver agreement filed by the distributee is all that the statute demands.

A third factual difference between the *Crawford* case and the instant case, which respondent asserts to be significant, relates to the earnings and profits of the redeeming corporations. In *Crawford,* the earnings and profits of the redeeming corporations were not sufficient to cover both the distributions to Mrs. Lillian Crawford and the estate, whereas in this case, Crescent Oil's earnings and profits were sufficient to cover the distributions to petitioner. We are unable to discern why this factual difference would influence a determination of whether the term "distributee" as used in section 302(c)(2) applies to a trust as well as to an estate and respondent, in his argument, does not enlighten us in this respect.

We hold that the term "distributee" in section 302(c)(2) is applicable to trusts as well as to estates. In our view, Congress' deliberate choice of the term "distributee" to designate those taxpayers eligible to file waiver agreements precludes a conclusion that the legislature intended waiver agreements to be filed only by family members.

*Decision will be entered under Rule 155.*