ESTATE OF RICHARD E. LEAR, Deceased, FRANK E. FREEMAN, EXECUTOR AND DOROTHY F. LEAR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Lear v. Commissioner
Docket No. 3899-77
United States Tax Court
T.C. Memo 1981-432; 1981 Tax Ct. Memo LEXIS 313; 42 T.C.M. (CCH) 667; T.C.M. (RIA) 81432; August 13, 1981. *313 Frank E. Freeman, for the petitioners. W. Robert Abramitis, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $ 100,499.24 deficiency in petitioners' 1972 income tax. The sole issue for determination is whether Dorothy Lear received taxable distributions from her wholly-owned corporation in 1972. FINDINGS OF FACT Some of the facts have been deemed admitted and are found accordingly. Frank E. Freeman is the executor of the Estate of Richard E. Lear. Dorothy F. Lear ("petitioner") and Mr. Freeman resided in Miami Beach, Florida, at the time they filed their petition. The Lear School, Inc. (the "School") is a fully accredited preparatory school located in Miami, Florida. The School enrolls approximately 375 students and has classes ranging from kindergarten through twelfth grade. The School operates on a strict budget which it finances from tuition and the operation of a summer camp. The School has always been a family-operated business. Mrs. Lear, Richard Lear's mother, founded the School in 1934. Its original location was on West Avenue in Miami Beach. Richard Lear joined his mother at *314 the School in 1939 upon his graduation from college and one year later petitioner joined the faculty. In 1941 petitioner and Richard were married. Although Mrs. Lear owned the School, petitioner and Richard were responsible for its operation and success. In 1963 Mrs. Lear transferred ownership of the West Avenue property on which the School was located. Mrs. Lear wanted to sell the West Avenue property but agreed to rent it to the School until a new location could be found. In 1964 petitioner and Richard incorporated the School. Richard was named the corporation's president and petitioner its secretary. In 1966 the School moved to a new site on Biscayne Boulevard in Miami. To finance this move, the School borrowed the necessary funds from Dade Federal Savings and Loan. The bank required the School to obtain insurance on Richard's life to adequately secure the loan. The School followed the bank's requirement and named itself as owner and beneficiary of at least one policy. [1] Several years later the bank notified the School that it no longer needed to carry insurance on Richard's life. Consequently, Richard intended to have the named beneficiary changed from the School *315 to petitioner. However, Richard died in April 1972, prior to any change of beneficiary. Petitioner assumed the role of president and sole shareholder of the corporation upon her husband's death. At his death, Richard was the insured on the following five life insurance policies: Insurance Company
Policy Number
Face Amount
Travelers
2-NW-19739
$ 10,000
Travelers
43-EW-52477
10,000
National Life
1126980
15,000
Travelers
33-EW-52477
75,000
Pilot Life
760918
193,000
Petitioner was the named beneficiary of the three smallest policies (total face amount of $ 35,000). The School was named beneficiary and owner of the other two policies. Checks for the proceeds from the Pilot Life policy and the $ 75,000 Travelers' policy were made payable to the School. [2] Petitioner, as president of the School, negotiated both of these checks and retained the funds for her personal account. Petitioner purchased in her own name a $ 180,000 certificate of deposit from Miami National Bank on May 5, 1972. Petitioner reported the interest income from the certificate on her individual *316 income tax return. Petitioner also used a portion of the insurance proceeds to pay taxes on Richard's estate. Petitioner intended to borrow and repay the proceeds of the Pilot Life policy as the School needed the funds. The School's books and records reflected this amount as a loan to petitioner. Although the School had no immediate need for most of the Pilot Life proceeds, it planned to build a library and a planetarium in the near future. From time to time petitioner liquidated a portion of the certificate of deposit and transferred funds into the School's bank account. Between April 1972 and April 1977 petitioner transferred at least $ 143,000 to the School. Eventually, petitioner liquidated the entire $ 180,000 for the School's benefit. In his statutory notice, respondent determined that the following life insurance policies were owned by the Lear School, Inc., and that the proceeds from these policies were distributed by the corporation to petitioner: Insurance Company
Policy Number
Proceeds
Travelers
2-NW-19739
$ 10,000.00
Travelers
43-EW-52477
10,000.00
National Life
1126980
15,000.00
Travelers
33-EW-52477
75,000.00
Pilot Life
760918
191,171.52
Total Distribution Received
$ 301,171.52
*317 Respondent calculated that $ 172,591.72 of the above amount represented earnings and profits of Lear School, Inc. and, consequently, constituted ordinary dividend income. The remaining distribution was deemed to be long-term capital gain. OPINION Petitioner's husband, Richard E. Lear, died in 1972. At that time, the Lear School, Inc. was the owner and beneficiary of two life insurance policies naming Richard Lear as the insured. The proceeds of these two policies totaled $ 266,171.52. Petitioner, as president of the School negotiated the two checks issued by the insurance companies and retained the proceeds for her personal account. Respondent contends [3] that the corporate funds represent taxable distributions to petitioner. [4] On the other hand, petitioner argues that she held the funds in trust for the corporation or, alternatively, that the funds constitute bona fide loans from the corporation. *318 The characterization of withdrawals from a corporation by its shareholder is a factual inquiry which depends on the intent of the parties at the time of withdrawal. See Berthold v. Commissioner, 404 F. 2d 119, 122 (6th Cir. 1968), affg. a Memorandum Opinion of this Court; Miele v. Commissioner, 56 T.C. 556, 567 (1971), affd. without published order, 474 F. 2d 1338 (3d Cir. 1973), cert. denied sub nom. Albers v. Commissioner, 414 U.S. 982 (1973).In this case respondent's determination is presumptively correct and petitioner bears the burden of proving the contrary. Rule 142(a), Tax court Rules of Practice and Procedure.
Initially, we dismiss petitioner's contention that the insurance proceeds were held by her in trust for the corporation.This contention is inconsistent with petitioner's personal use of the proceeds, e.g., paying her husband's estate taxes and purchasing a $ 180,000 certificate of deposit in her own name. [5]
The resolution of petitioner's alternative argument, i.e., the withdrawals *319 represent bona fide loans, is not free from doubt. Nonetheless, after carefully distilling the less than ideal record before us, we find that the $ 191,171.52 proceeds from the Pilot Life policy was, in fact, loaned to petitioner by the corporation. We reach this conclusion based on the following considerations. First, petitioner's credible testimony that she intended to repay the funds so that they would ultimately be used for the School's benefit. Second, the books and records of the School reflected the withdrawal as a loan to petitioner. Miele v. Commissioner, supra at 568. Third, petitioner's use of the funds reasonably insured that petitioner would have the means to repay the loan. [6] The bulk of the proceeds was deposited in a certificate of deposit. Petitioner's plan, which she adhered to, was to partially liquidate the certificate of deposit as the School needed funds. By having the funds in a liquid state, petitioner was able to repay the loan on short notice. Finally, and significantly, petitioner repaid a major portion of the loan by transferring at least $ 143,000 to the corporation between 1972 and 1977. [7] See Berthold v. Commissioner, 404 F. 2d 119, 122 (6th Cir. 1968); *320 Miele v. Commissioner, supra at 568 n. 5. With respect to the $ 75,000 proceeds from the Travelers' policy number 33-EW-52477, we do not reach the same conclusion. In contrast to the other proceeds, there is no evidence in the record that the corporation's books and records reflected the $ 75,000 as a loan, that petitioner intended to repay the $ 75,000 nor that petitioner did, in fact, repay this amount. Under these circumstances, we cannot say that petitioner has carried her burden of proof. Decision will be entered under Rule 155. Footnotes
1. The corporation obtained a $ 193,000 policy from Pilot Life Insurance Company.↩
2. The net proceeds of the Pilot Life policy were $ 191,171.52.↩
3. On brief respondent conceded that the proceeds from three insurance policies totaling $ 35,000, see page 5, supra↩, were not taxable to petitioner. 4. In his statutory notice respondent determined that the School had earnings and profits totaling $ 172,591.72. At trial petitioner presented no evidence as to the corporation's earnings and profits. Consequently, we assume that respondent's calculation is correct. Rule 142(a), Tax Court Rules of Practice and Procedure.↩
5. Petitioner reported the interest income from the certificate of deposit on her individual tax return.↩
6. See Johnson v. Commissioner, T.C. Memo. 1979-7 (1979), affd.     F.2d     (6th Cir. 1981)↩. 7. On brief, respondent points to the absence of a note or other evidence of indebtedness and the absence of any interest payments as supportive of his position. While these factors would surely strengthen petitioner's case, their absence is not fatal. See Thistlethwaite v. Commissioner, T.C. Memo. 1966-30↩ (1966).